DORIS SWARTZ, APPELLEE, v. HESS, INC., APPELLANT.

198 N. W. 2d 64

Filed May 26, 1972. No. 38322.

Swartz, Wieland, Eberly & Marolf, for appellant.

Nelson, Harding, Marchetti, Leonard & Tate and Richard H. Williams, for appellee.

Heard before SPENCER, SMITH, and NEWTON, JJ., and CHADDERDON and C. THOMAS WHITE, District Judges.

C. THOMAS WHITE, District Judge.

This is an appeal from the judgment of the district court finding that Edgar Swartz, hereinafter referred to as decedent, sustained an accident arising out of and in the course of his employment with the defendant Hess, Inc., and awarding compensation to his widow. The Workman's Compensation Court had found that the plaintiff had not met the burden of proof that the decedent's death was caused by accident and injuries resulting from his employment, and dismissed the action.

The facts are not in controversy. Decedent died on February 18, 1969. At the date of his death he was an employee of the defendant Hess, Inc., and had been so for a year and a half. His duties with Hess, Inc., were those of a delivery man for propane fuel to rural areas and towns in and about Fairbury, Nebraska. On the date of his death, decedent reported for work at about 7 a.m., his regular starting time. His schedule of deliveries was handed him. The morning deliveries were in Diller, Nebraska, approximately 15 miles east of Fairbury on a graveled road known as the PWF Road. Decedent returned from Diller at approximately 11 a.m., unloaded. He had lunch while Roy Hess, the

owner of Hess, Inc., reloaded his truck. Decedent left Fairbury shortly after 12:15 p.m. Roy Hess had placed a schedule in the decedent's truck while reloading, indicating further deliveries in Diller, Nebraska. At a point on the PWF Road from Fairbury to Diller approximately 8 ¾ miles east of Fairbury, the truck decedent was driving left the road, apparently in a gradual fashion, went into the ditch, traveled 169 feet and overturned, trapping the decedent in the cab of the truck. There was evidence of a washboard effect on the roadway 25 to 50 feet or more to the rear of the point where the truck left the road. The decedent was alive after the crash and spoke, requesting assistance in getting out of the smashed cab. When decedent was removed from the cab of the truck, Dr. Frank Falloon examined him in an ambulance at the Lynch Clinic in Fairbury at 2:05 p.m. and pronounced him dead, and determined that decedent had suffered a head injury, and appeared to have a broken right leg and a crushed chest. On the death certificate Dr. Falloon recorded the cause of death "as a skull injury secondary to a truck accident with intercranial injury and cardiovascular collapse, associated injuries with crushed injury to the chest."

Dr. Falloon further testified that the "most likely cause of the patient's demise" appeared to be a skull fracture.

Decedent had a long record of treatment for high blood pressure first diagnosed on October 12, 1964, complicated by an over-weight condition. The last visit to Dr. Falloon was on January 30, 1969. Blood pressure read 170 over 102, having been reduced from a previous visit on December 2, 1968, of 200 over 100 when decedent informed Dr. Falloon that he had been out of medication for several days. Dr. Falloon testified: "I would emphasize that from viewing the body postmortem the precipitating event * * * could only be speculative."

Dr. Monte M. Scott, a specialist in internal medicine, after reviewing the records and deposition of Dr. Falloon, and a review of the known physical facts of the accident, testified in response to a hypothetical question, in his opinion with reasonable medical certainty, the precipitating cause of decedent's truck leaving the road was a stroke, but also that, "I feel that the injuries . . . such as the right leg fracture could have been sufficient to produce cardiovascular collapse." He also stated on cross-examination that the cause may have been decedent going to sleep or daydreaming.

An autopsy was not performed. Whether a cardiovascular accident (stroke) occurred is not known. The only evidence with regard thereto is the expert testimony of Dr. Scott. If decedent had a stroke, it is not known when in the sequence of events it happened.

On an appellate review of a workman's compensation case, the cause will be considered de novo only where the findings of fact are not supported by the evidence as disclosed by the record. Gifford v. Ag Lime, Sand & Gravel Co., 187 Neb. 57, 187 N. W. 2d 285. The defendant urges that a compensation award cannot be based on speculative evidence, possibilities, or probabilities, and asserts as the reason for reversal of the award, the opinion based on reasonable medical certainty that the cause of the decedent's truck leaving the roadway was "a stroke or cardiovascular accident," and that assuming such prior stroke, the precipitating cause of the accident, injury, and death was such stroke and did not arise out of and in the course of employment.

The plaintiff urges that even if there were conclusive evidence that decedent suffered a stroke prior to his truck leaving the roadway, nevertheless the judgment must still be affirmed, and urges the adoption of the rule stated in the case of Tapp v. Tapp, 192 Tenn. 1, 236 S. W. 2d 977, which held that where a physical disturbance occurs (in that case an asthmatic attack

causing the driver to black out) suddenly, and contributes to cause an injury with another hazard (the dangers incident to driving) the injury is compensable. In the view we take of this case, it is not necessary to consider this contention.

A trier of fact is not required to take the opinions of experts as binding upon him. Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N. W. 2d 151; NJI No. 1.42.

The trial court could properly find under the evidence that the accident arose out of the condition of the road, the driver sleeping or daydreaming, and was not required to accept as conclusive the opinion of a medical expert, as to an unrelated precipitating cause. There being evidence in the record to support the findings of the trial court, we affirm its judgment. Plaintiff's counsel will be allowed a fee of $1,000 for services in this court.

AFFIRMED.