INDOOR RECREATION ENTERPRISES, INC., A CORPORATION, ET AL., APPELLANTS, V. PAUL L. DOUGLAS, COUNTY ATTORNEY OF LANCASTER COUNTY, APPELLEE.

235 N. W. 2d 398

Filed November 20, 1975. No. 39897.

Friedman & Berry, for appellants.

Ronald D. Lahners and Robert R. Gibson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

The appellants brought this action seeking a declaratory judgment that poker, bridge, chess, and checkers were games of skill and that "the playing of said games or the operation of a place where such games are played shall not be considered a violation of the gambling laws

of the State of Nebraska, Sections 28-941 through 28-947 inclusive, Nebraska R R S 1943," and for an injunction restraining the appellee, the county attorney of Lancaster County, from prosecuting the appellants under these sections of the statute. The District Court denied the relief prayed for and dismissed the appellants' petition. This appeal followed.

Appellant Long is the president, and along with his wife, the sole stockholder of Indoor Recreation Enterprises, Inc. They operate an establishment in Lincoln, Nebraska, called the Golden Cue Recreation Center. In June 1973, Long set aside a separate area in the Golden Cue, calling it the Checkmate Club. Located in this portion of appellants' establishment were several tables and chairs. At the main desk where the cash register was located, Long kept decks of cards, checker and chess sets, poker chips, and other gaming paraphernalia. In order to utilize the facilities of the Club, one was required to file an application for membership and pay a membership fee of $1. In addition, 75 cents per person per hour was charged for the use of the facilities. It is not disputed that members were allowed to wager on the games they played. Long admitted that there was "unquestionably" in his mind gambling upon the games of poker played at the Club.

We summarize the assignments of error for purposes of consideration in this court. Essentially, the appellants contend that the District Court was in error in finding that poker and bridge were games of chance and not games of skill. The appellants assert that the undisputed testimony of Long and their expert witness, Mr. Oswald Jacoby, who gave their opinions that poker and bridge were games of skill and not games of chance, must be accepted by the trial court. There was no other testimony on this point.

We examine our decisions that have passed upon the question of distinguishing games of skill from games of chance. In Baedaro v. Caldwell, 156 Neb. 489, 56 N. W.

2d 706 (1953), this court stated as follows: "The test of the character of the game is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game. * * * A game of chance is one in which the result as to success or failure depends less on the skill and experience of the player than on purely fortuitous or accidental circumstances incidental to the game or the manner of playing it or the device or apparatus with which it is played, but not under the control of the player."

In Annotation, Games of Chance or Skill, 135 A. L. R. 104 (1941), the authors state: "* * * games of cards are games of chance even though the element of skill is more or less involved, since the element of chance predominates."

In State v. Taylor, 111 N. C. 680, 16 S. E. 168 (1892), the following observation was made on games played with cards: "It is a matter of universal knowledge that no game played with ordinary playing cards is unattended with risk, whatever may be the skill, experience, or intelligence of the gamesters engaging in it. From the very nature of such games, where cards must be drawn by and dealt out to players, who cannot anticipate what ones may be received by each, the order in which they will be placed, or the effect of a given play or mode of playing, there must be unavoidable uncertainty as to the results."

In State v. Prevo, 44 Hawaii 665, 361 P. 2d 1044 (1961), the court held: "* * * the test of whether a game is one of skill or of chance, or one in which skill greatly predominates over chance, is *not* to be measured by the *standard of experts or any limited class of players*, but by that of the *average skill of a majority of players likely to play the game,* * * *." (Emphasis supplied.)

During cross-examination of the appellants' expert witness, Mr. Jacoby, the following exchanges took place:

"Q- Now I take it, if they played 100 hands and the good player had lost — had lost each of the first 99 games, what is the chance of the expert player winning the next hand?

"A- The same as his chance of winning the first hand.

"Q- Which is even?

"A- Yes. Probably less than even because the good player tends to throw away bad hands and, so, probably, in a 100 hands between an expert and a bad player, the bad player would win more hands and the expert would win more money.

"Q- So, that in 100 hands, the winner and the loser is going to be determined upon the deal of the cards.

"A- That's correct.

"Q- Which is what?

"A- Luck."

Mr. Jacoby also testified on cross-examination:

"Q- Now, what about in poker, in any one deal, I take it, the chance of getting any one of the two or three million hands would be called luck?

"A- Correct.

"Q- That would apply, — the initial deal in the draw poker game would be luck?

"A- Correct.

"Q- All right. The initial deal in a bridge game is also luck?

"A- Sure.

"Q- Which, I take it, then — let's go on. What about stud poker, would the initial deal be luck?

"A- The initial two cards would be luck.

"Q- And after that, after the initial two cards and the betting commences, the particular cards that are dealt next, would that be luck?

"A- Yes.

"Q- And the next card?

"A- Yes.

"Q- And the next card?

"A- Yes. * * *."

The above colloquy demonstrates that there was sufficient factual basis in the record to support the District Court's conclusion that the predominate purpose of the games in issue was chance. The opinion conclusion of the expert witness is not required to be taken, by the court, even though uncontroverted. A trier of fact is not required to take the opinions of experts as binding upon him. Swartz v. Hess, Inc., 188 Neb. 542, 198 N. W. 2d 64 (1972). There is no merit to this assignment of error.

The appellants next boldly assert that it was error for the court not to take judicial notice "of the fact that poker and bridge are played as a matter of course throughout the City of Lincoln by residents in clubs and residences and played for the wagering of money." Section 27-201 (2), R. S. Supp., 1975, of the recently adopted Nebraska Rules of Evidence, which comports with the preexisting case law on judicial notice states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable. of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

For a fact to be judically noticed, it is not enough that it rests upon conjecture or suspicion, on gossip or rumor, or that it be commonly asserted, if that be true. The general rule is that in order that a fact may properly be the subject of judicial notice, it must be *"known"* - that is, well *established* and *authoritatively settled,* without qualification or contention. A court must be reasonably certain of everything of which it takes judicial notice, that is, the certainty that the fact is uniform and fixed, and if there is any doubt whatever either as to the fact itself or as to its being established or a matter of common knowledge, evidence must be required to support a finding of fact based upon it. See 29 Am. Jur. 2d, Evidence, § 24, p. 61. It is obvious that the allegation

in the appellant's petition that there is wide-spread gambling in Lincoln, Nebraska, is not authoritatively settled, without qualification or contention. Nor can we perceive any readily available sources from which such a fact could be ascertained, assuming it was subject to proof. There is no merit to this contention.

Other assignments of error have been examined and are without merit. They are either disposed of by what we have already said in this opinion, or are unnecessary to discuss.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

CLINTON, J., concurs in the result only.