LARRY T. SMITH, APPELLANT, V.
ROGER ERFTMIER AND THE COMMERCIAL
NATIONAL BANK OF AINSWORTH, NEBRASKA,
A NEBRASKA BANKING CORPORATION, APPELLEES.

315 N.W.2d 445

Filed January 29, 1982.   No. 43707.

Rodney J. Palmer for appellant.

David E. Pavel of Harris, Feldman, Stumpf & Pavel for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The instant appeal arises out of a contract entered into by and between the appellant, Larry T. Smith (Smith), a contractor, and the appellee Roger Erftmier (Erftmier) for the erection of a grain drying and storage complex to be located upon real estate owned

by Erftmier in a rural area of Keya Paha County, Nebraska. The appellee The Commercial National Bank of Ainsworth, Nebraska, is merely a stakeholder in this action, having received some $19,710 from Erftmier to hold pending the settlement of the dispute, and may, for purposes of this case, be disregarded. Smith filed suit against Erftmier for the balance allegedly due on the construction contract. Erftmier denied that he was indebted to Smith in any amount and filed a counterclaim seeking damages based upon Smith's alleged failure to construct the complex in a good and workmanlike manner and in accordance with the contract. Upon conclusion of a trial to the court, a jury having been waived, the trial court denied judgment to Smith on his petition. Further, the trial court entered judgment for Erftmier against Smith on Erftmier's counterclaim in the total amount of $33,544.01 and ordered that the $19,710 held in escrow by The Commercial National Bank of Ainsworth, Nebraska, be applied on the judgment. We believe that the trial court was in all respects correct, and affirm the judgment.

The contract between Smith and Erftmier was entered into on August 29, 1977, and was, in form, a standard AIA Document A101. By its terms Smith was to erect for Erftmier four grain bins, two of which were identified as Butler brand grain bins and two of which were identified as Eaton brand grain bins. The references are to the names of the manufacturers of the bins. In return for the work to be done by Smith, Erftmier agreed to pay to Smith the sum of $109,500, payments to be in accordance with the contract. Attached to the contract and made a part of it was AIA Document A201, "General Conditions of the Contract for Construction." By its terms Smith specifically warranted to Erftmier that "all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents."

Three of the bins were completed by November 18,

1977, and the fourth one was completed in January of 1978. The evidence discloses that bin No. 1, the Butler drying bin, was 36 feet in diameter and had an eave height of 25 feet 8 inches. The second Butler bin had a diameter of 42 feet and an eave height of 33 feet. The remaining Eaton bins had a diameter of 48 feet and an eave height of 26 feet 10 inches.

The evidence discloses that during the construction period Erftmier continued to make payment to Smith even though he had several problems regarding the construction. By the time of trial all of these matters appeared to have been cleared up with the exception of the two now remaining. Those two items consisted of what Erftmier claimed was poor concrete work and inadequate footings and foundations beneath the bins. The evidence discloses that during the construction of the bins the contractor had in his possession a manual entitled "Grain Bin Erection Manual," published by the Eaton company. The manual provided in part: "An adequate foundation is essential to trouble-free service from your grain bin." It further provided that the foundation for the grain bin must be below the frostline. The evidence further disclosed that, rather than having foundations as indicated by the Eaton manual and as Erftmier's expert would have required, bin No. 1 had no footings at all and bin Nos. 2, 3, and 4 all had narrow, shallow footings with what was designated as a "rat ring" going down about 18 inches.

Smith assigns a number of errors, but basically argues three. First, he maintains that when Erftmier took possession of the bins and started using them, he accepted the bins and waived any alleged default; second, Smith maintains that the trial court erred in not finding that proven local custom, tradition, and usage did not require the installation of footings in connection with the construction of the bins; and, finally, that the wrong measure of damages was used.

We turn first to the question concerning custom and

usage. In the first place, Smith never pleaded the matter of custom and usage. Moreover, there is no evidence in the record that Erftmier had knowledge of the custom, if one existed, and contracted with reference to the alleged custom. The evidence, quite to the contrary, is that Erftmier did not reside in the area and had no knowledge of any alleged custom and usage with regard to the footings and the foundations. In *Fisher v. Stuckey*, 201 Neb. 439, 449, 267 N.W.2d 768, 774 (1978), we said: "'It is ordinarily incumbent upon one who relies on a special custom as a basis of recovery or defense to allege the custom and to plead and prove the other party had knowledge of the custom and contracted with reference thereto.' Timmerman v. Hertz, 195 Neb. 237, 238 N.W.2d 220 (1976). In the present case, Fisher did not allege the custom on which he relies, nor did he plead that the Stuckeys had knowledge of the custom and contracted with reference thereto. In view of this fact, we conclude that Fisher has failed to properly raise the issue of custom in this case, and reject his contention that a trial is necessary to resolve the custom issue." Similarly, in the instant case Smith neither alleged any custom nor did he allege or prove that Erftmier had knowledge of the custom and contracted with reference thereto.

But perhaps even more important in the instant case is the fact that the trial court permitted Smith to introduce all of his evidence with regard to custom and usage, though it was not admissible, and chose not to believe it. Smith called several witnesses, all of whom testified that local custom, usage, and tradition indicated that grain bins erected upon the sandy loam soil in north central Nebraska did not require footings below the frost level for either longevity of the project or economics of the project. Erftmier, on the other hand, called a witness who testified that he had been involved in the design of grain bins for both Butler and Eaton and had prepared and approved the ma-

terial regarding foundation design found in the Eaton manual. He testified that the foundations for grain bins of the size at issue should have a spread footing below the frostline, and down 50 to 60 inches below the ground.

At best, the question of whether footings and foundations were necessary was a question of fact. The trial court chose to believe Erftmier's witness and disregard Smith's witnesses. This was a matter solely within the discretion of the trial court sitting as a finder of fact, and a conclusion with which we have no authority to change. As we noted in *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 39, 302 N.W.2d 655, 661 (1981): "'The case below was tried to the court. Our rule is well-established. Where a law action is tried to the court without a jury, the finding of the court has the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.'" Unless we are able to say that the testimony of Smith's witnesses must be believed as a matter of law, which we are not willing to do, then the trial court's decision to believe Erftmier's witness and disregard Smith's witnesses was not error. As we noted in *Erving v. Tri-Con Industries, ante* p. 339, 314 N.W.2d 253 (1982), the triers of fact are not required to take the opinions of experts as binding upon them. See, also, *Swartz v. Hess, Inc.*, 188 Neb. 542, 198 N.W.2d 64 (1972). The testimony of all the witnesses at best produced a conflict which the trier of fact had to resolve. *Smith v. Platte Valley Public Power and Irrigation District*, 151 Neb. 49, 36 N.W.2d 478 (1949). The requirement that the work should be done in a good and workmanlike manner cannot be questioned. Both the contract itself and the law generally required that the bins be built in a good and workmanlike manner. In *Tibbs v. Fisher*, 208 Neb. 306, 307, 303 N.W.2d 293, 295 (1981), we said: "It is well recognized that, as a general rule, every contract for work or services includes an implied duty to

perform the work or services skillfully, carefully, diligently, and in a workmanlike manner." The trial court found that, based upon competent evidence in the record, Smith failed to construct adequate and sufficient footings beneath the bins and his actions resulted in his failing to perform the contract work in a good and workmanlike manner. We cannot say that the trial court was wrong.

The second issue raised by Smith is that the trial court used the wrong measure of damages by allowing the cost of repair. The trial court found that the reasonable cost of repairing the defective work and constructing adequate footings and foundations was in the amount of $33,000. Smith argues that the cost of repair is a proper measure of damages only where the cost of repair is reasonable or where only a portion of an article is damaged and repairs are necessary before any of it can be used. He further claims that the rule is not applicable where the property cannot feasibly be restored to its original condition, and in such a case the difference in the value of the property "before and after" is the proper measure of damages. We can easily dispose of that claim. In the first instance, Smith offered no evidence to support his claim that the property could not be repaired. Nor did he offer any evidence as to the value of the property "before and after." The only evidence offered by Smith was the cost of repair. His witnesses all testified that whatever defects may exist, they were minor in nature and could be repaired. He tried the case on the theory that the cost of repair was the proper measure of damages. We have frequently held that where a certain theory has been adopted and relied upon by the parties during the trial, such theory will be adhered to on appeal regardless of whether it is correct. *Rieschick Drilling Co. v. American Cas. Co.*, 208 Neb. 142, 303 N.W.2d 264 (1981). In particular, we have followed that rule with regard to the theory of damages. See, *Jacobs v. Korst*, 175 Neb. 639, 122

N.W.2d 760 (1963); *Haarberg v. Schneider*, 174 Neb. 334, 117 N.W.2d 796 (1962); *Porterfield v. Buffalo County Public Power District*, 138 Neb. 720, 295 N.W. 379 (1940). But perhaps of even greater significance in this case is the fact that what little evidence there was concerning the value "before and after," offered by Erftmier, made it clear that the cost of repairs was less than what the damages would have been if the court had adhered to the theory of damages now contended for by Smith. There was evidence offered by Erftmier's expert, which the trial court could believe, to the effect that the failure to construct the footings properly would diminish the life and value of the bins by 50 percent. On that basis, the court could reasonably conclude that the bins were only worth half as much as the contract price. This obviously would have been excess of the damages awarded by the court sufficient to make the necessary repairs. Smith's claim of error in this regard must likewise be disregarded.

And, finally, Smith maintains that the trial court erred in not finding that Erftmier was precluded from claiming damages by accepting the bins and using them. This argument, of course, ignores the fact that at the time Erftmier accepted the bins he was not aware that the footings had not been properly constructed, nor was he aware that the bins would thereafter crack as, in fact, they did. The evidence discloses that the concrete work is irregular, and on bin Nos. 3 and 4 there are large gaps of up to 2 inches which would not have been remedied by sealing with tar. In addition, areas of spalling and cracking are present. These apparently have been caused by reason of the weight being placed upon the inadequate footings and foundations. While it is true that we have on occasion held that acceptance by one may preclude him from thereafter claiming a default, we have never applied the rule where the evidence discloses that the one accepting the product does not

have knowledge of the default at the time he accepts performance. *Randall v. Erdman,* 194 Neb. 390, 231 N.W.2d 689 (1975). The evidence in this case clearly establishes that Erftmier did not discover the footings problem until the summer of 1978, and after he started using the bins. Thus, for the first year that Erftmier used the bins he did not have knowledge of the default in the contract. Furthermore, the evidence clearly established that while there were defects in the bins which would ultimately seriously affect their use, the defects did not, at the time the bins were used by Erftmier, prevent their use. It is a well-established rule in this state that where there has been a breach of a contract by one party resulting in a loss to the other, it is the duty of such other party to take all reasonable steps to reduce the amount of his damages. It is the rule also that where one fails to perform such duty he may not recover damages which would have been avoided had such duty been performed. See, *Selig v. Wunderlich Contracting Co.,* 160 Neb. 215, 69 N.W.2d 861 (1955); *Chicago Roller Skate Mfg. Co., Inc. v. Sokol Manuf. Co.,* 185 Neb. 515, 177 N.W.2d 25 (1970). Had Erftmier not used the bins, he would have suffered even greater losses, either by having to rent other storage space or exposing the grain to the elements. There is no question but that Erftmier did Smith a favor by using the bins and mitigating the damages.

During the argument on the motion for new trial, Smith sought to offer in evidence a Butler manual which he claims would support a position that footings were unnecessary for the bins. The difficulty with Smith's position is that it ignores several basic legal principles. In the first instance, Smith never claimed he was entitled to omit the footings because of the Butler manual, but, rather, because of local custom. Additionally, there is no evidence that Smith followed the Butler manual in erecting the bins. The manual would not have established either local custom

or compliance with the contract, and therefore was irrelevant to that issue. Furthermore, Smith sought the introduction of the manual on the grounds of newly discovered evidence pursuant to Neb. Rev. Stat. § 25-1142(7) (Reissue 1979). The record, however, supports the trial court's position to the effect that the manual was in existence prior to trial and could have and should have been offered at that time. Smith has failed to meet any of the enumerated grounds entitling him to a new trial on the basis of newly discovered evidence. In *Jensen v. John Hancock Mutual Life Ins. Co.*, 145 Neb. 409, 412-13, 16 N.W.2d 847, 849 (1944), we said: "To make sufficient showing on the ground of newly discovered evidence, as contemplated by the seventh subdivision of section 20-1142, Comp. St. 1929, the proof must show that neither the litigant nor his counsel could have discovered the evidence by the exercise of due diligence. See *Wiegand v. Lincoln Traction Co.*, 123 Neb. 766, 244 N.W. 298.

" 'Newly discovered evidence is not a ground for a new trial, where the exercise of due diligence before trial would have produced it.' *Hardt v. Orr*, 142 Neb. 460, 6 N.W.2d 589. See, also, *Gate City Co. v. Douglas County*, 135 Neb. 531, 282 N.W. 532; *Buzzello v. Sramek*, 110 Neb. 262, 193 N.W. 743.

. . . .

"Applications for a new trial are entertained with reluctance and granted with caution, because of the manifest injustice in allowing a party to allege that which may be the consequence of his own neglect in order to defeat an adverse verdict, and, further, to prevent fraud and imposition which defeated parties may be tempted to practice to escape the consequences of an adverse verdict."

Having concluded, therefore, that Smith's assignments of error are without merit, the judgment of the trial court is in all respects affirmed.

AFFIRMED.