THIRD PARTY SOFTWARE, INC., APPELLEE AND CROSS-APPELLANT, v. TESAR MEATS, INC., APPELLANT AND CROSS-APPELLEE.

414 N.W.2d 244

Filed October 16, 1987.   No. 85-979.

David J. Lanphier of McGill, Koley, Parsonage & Lanphier, P.C., for appellant.

Dean J. Jungers of Hascall, Jungers & Garvey, for appellee.

BOSLAUGH, C.J., Pro Tem., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This is a suit for damages in a contract termination case involving computer services that plaintiff, Third Party Software, Inc. (Software), had agreed to supply to defendant, Tesar Meats, Inc. (Tesar). Tesar appeals the dismissal of its counterclaim, and the $5,195.20 judgment in favor of Software. Software cross-appeals, claiming inadequate damages. A jury was waived. We affirm.

Tesar assigns four errors. First, its motion for a directed verdict at the close of plaintiff's case was denied. Tesar failed to address this error in its brief, and we do not discuss it. Neb. Ct. R. of Prac. 9D(1)d (rev. 1986). Second, the trial court failed to consider that Software did not mitigate its damages. Third, the trial court erred in assessing the damages, and the damages were excessive. Fourth, it was error to dismiss Tesar's counterclaim.

The findings of the court in a law action in which a jury is waived have the effect of a verdict of the jury and will not be disturbed on appeal unless clearly wrong. *Smith v. Erftmier*, 210 Neb. 486, 315 N.W.2d 445 (1982); *Stauffer v. Wilson*, 182 Neb. 129, 153 N.W.2d 454 (1967).

There is little dispute in the evidence. The trial judge could find that Tesar is a processor of meats in Omaha, Nebraska, selling both retail and wholesale. Software was starting a new computer service business in Council Bluffs, Iowa, intending to provide accounting, business records, and other computer-related services to various customers, either by placing computers at the customer's business or by connecting the customer via telephone lines with a larger computer located in its Council Bluffs office. The latter arrangement was the subject of this lawsuit. Tesar was Software's first major service customer; the contract was described as a startup contract wherein Software did not contemplate making a profit; rather,

it expected to break even.

In 1982 and 1983, Tesar's operations showed dramatic unexplained losses which were suspected to be an inventory problem; particularly, the inability to trace raw products through the processing and delivery procedures. After some discussion between the parties, a written contract was executed by both parties on July 13, 1983, whereby Software was to design a special program for Tesar, including accounting, business records, inventory information, and other services to Tesar for a 3-year period at $505 per month rental. No beginning date was included in the contract; however, both parties assumed that it would be September 1, 1983. In fact, the monthly payments were to begin on September 1, 1983, unless Software could not perform due to equipment delays. Software began to acquire the necessary equipment. Credit arrangements were made to purchase a large-capacity model 9300 computer from NCR Corporation, which was ordered in August 1983 but not delivered to Software until late November 1983. This computer could support 14 terminals, of which 3 would be assigned to Tesar. About September 1, 1983, Software rented a small model 8271 NCR computer to serve the Tesar contract; however, Software did not then have the other needed complementary parts to install the computer equipment at Tesar. All of the parts were received on October 4, 1983, and they were taken directly to Tesar for installation, where John Tesar, president of the company, was found in an agitated state because he had just been told by his bank creditor that the Tesar note was being called because of its last unsatisfactory auditor's report. John Tesar said, "We're going out of business," "It's all over," "There's nothing we can do." Software ceased installation and removed most of its equipment that had been brought. Software hoped that Tesar could solve its credit problems and resume the contract; however, Software removed all of its equipment by January 1984, and this suit followed, wherein Software claimed $18,180 damages for all of the unpaid monthly installments. Tesar filed a counterclaim for $15,000, alleging failure to perform the contract. This counterclaim was dismissed.

Following termination of the contract on October 4, 1983,

Software returned all equipment and parts that its suppliers would accept, it terminated temporary rentals of equipment, and it made an unsuccessful effort to replace Tesar's assigned use of the NCR 9300.

The main issue here is the proper measure of damages. Generally, "[t]he measure of damages in a case of breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed." *May v. Marijo Corp.*, 207 Neb. 422, 424, 299 N.W.2d 433, 434 (1980).

Early in the evidence, the trial judge had a conference with counsel on the damages issue, saying,

> The only reason I wanted to know before going on with the testimony: it's my understanding this contract has not been completely performed by reason of unlawful termination. The measure of damages is not necessarily the contract price but is the value of services performed or the value of supplies furnished and the loss of anticipated profit. Is that your understanding of what the law is?

Counsel for Software did not disagree, and counsel for Tesar said, "[T]he contract was executory—or hadn't been fully performed and it was terminated, that the measure of damages was the out-of-pocket plus the profits that they could have received." It appears from the record that this theory of damages was followed during the rest of the trial, and Software did produce evidence showing $17,822.41 for out-of-pocket expenses.

"Where a certain theory as to the measure of damages is relied upon by the parties to the trial as the proper one, it will be adhered to on appeal whether it is correct or not." *Baum v. County of Scotts Bluff*, 169 Neb. 816, 827, 101 N.W.2d 455, 463 (1960); *Smith v. Erftmier*, 210 Neb. 486, 315 N.W.2d 445 (1982).

After trial, the case was submitted on briefs, and a $5,195.20 judgment was entered against Tesar for these out-of-pocket costs and expenses:

| | |
|---|---|
| 2 months rental for computer | $2,190.60 |
| 2 months rental for software | 200.00 |
| Multiplexor expense | 317.17 |

| | |
|---|---|
| Modems | 2,196.00 |
| Plaintiff's cost for telephone jack | 169.75 |
| Installation of rented computer | 121.68. |

The second assigned error concerns the rule that Software had a duty to mitigate its damages. *Smith v. Erftmier, supra.* The record does not support Tesar's claim that the judge did not consider that issue. On the contrary, the judgment recites that the court, "having reviewed the evidence and trial briefs submitted herein finds for the plaintiff . . . ." Further, from the record the judge could find that Software had made a reasonable effort to mitigate its damages.

The third assigned error claims that there was error in the assessment of damages and that they were excessive. From the record and the circumstances here, the judge could find that the July 13, 1983, contract was binding upon both parties; that on October 4, 1983, Software was ready and able to perform the contract terms, which were still in force and binding upon both parties; that on October 4, 1983, Tesar terminated the contract by refusing permission to install computer equipment; that Software made a reasonable effort to mitigate its damages; that Software's claimed expenses were not business startup expenses but, rather, costs and expenses attributable to the July 13 contract incurred prior to termination; and that Software suffered reasonable out-of-pocket expenses and costs in that the rental of the computer and software was an effort to provide a temporary operational computer service to Tesar, and the sum of $2,190.60 was Tesar's share of the computer rental, the multiplexors and modems were required connecting equipment with the telephone transmission lines, and the two service charges of $169.75 and $121.68 were necessary in the installation process. There was no evidence that the judgment was excessive in that it was the result of passion, prejudice, mistake, or disregard of the evidence or applicable rules of law. *Wellman v. Birkel*, 220 Neb. 1, 367 N.W.2d 716 (1985). There was no error in the $5,195.20 judgment against Tesar, and it was not excessive.

For the same reasons, Tesar's counterclaim was properly dismissed.

In its cross-appeal, Software argues that the measure of

damages should be the same as in the breach of contract for personal service, "the amount of the salary agreed upon for the period involved less the amount which the servant earned or, with reasonable diligence, might have earned," *Lee v. Ralston School Dist.*, 180 Neb. 784, 785-86, 145 N.W.2d 919, 921 (1966), and that it should recover all of the unpaid monthly installments, amounting to $18,180, even though its proof included a total of out-of-pocket expenses of $17,822.41. There is no merit to the cross-appeal.

AFFIRMED.