VIRGIL W. DRABBELS, ADMINISTRATOR OF THE ESTATE OF COLEEN ANN DRABBELS, DECEASED, APPELLANT, V. SKELLY OIL COMPANY ET AL., APPELLEES.

50 N. W. 2d 229

Filed December 7, 1951. No. 33054.

18

*Charles A. Fisher,* for appellant.

*Leo M. Bayer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action by the administrator of the estate of Coleen Ann Drabbels, deceased, for her wrongful death. The defendants filed identical demurrers to the petition which were sustained. Plaintiff elected to stand on his petition and the trial court thereupon entered judgment dismissing the action. Plaintiff appeals.

The petition alleges that the defendant Skelly Oil Company is engaged in the selling of bottled gas under the trade name of Skelgas and that the defendant Frey is the agent of the Skelly Oil Company at Gordon, Nebraska, for the handling, sale, and delivery of Skelgas to the public. It is further alleged that Virgil W. Drabbels purchased a container of Skelgas from the defendant Frey which, because of the defective condition of the container, exploded and caused the death of the decedent. The explosion occurred on July 2, 1948. The decedent, the unborn child of Audrey Drabbels, wife of Virgil W. Drabbels, was born dead on July 5, 1948. The petition alleges that at the time of the explosion the pregnancy of Audrey Drabbels had advanced to a period of approximately eight months and that the unborn child was viable and capable of separate and independent existence.

The demurrer is directed to the following: That decedent was dead when born, that the child was never an existing person, that there was never a person or estate for which the plaintiff could be appointed the

administrator, and that plaintiff has no legal capacity to sue.

The action was commenced under the wrongful death statute of this state which provides: "Whenever the death of a person shall be caused by the wrongful act, neglect or default, of any person, company or corporation, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." § 30-809, R. R. S. 1943.

The question raised by the demurrer is here for determination for the first time. Briefly stated, the question is whether the administrator of the estate of an unborn child, which dies prior to birth as the result of another's negligence, has a cause of action on behalf of the next of kin of the unborn infant under the wrongful death statute.

The wrongful death statute is plain in stating that the right of action created by it exists only in cases wherein the injured person could himself have maintained an action for damages had he lived. It is clear, therefore, that plaintiff can maintain no action for damages on account of the death of the child unless the child, had it lived, could have maintained an action against the defendants for the injury inflicted upon it before its birth. The cases hold, from a numerical standpoint at least, that damages for prenatal injury may not be recovered either by the injured child if it be born and lives or by its personal representative in the event of its death before birth from such injury. The early common law appears to be to this effect.

In Dietrich v. Northampton, 138 Mass. 14, 52 Am. R.

242, it was said: "Taking all the foregoing considerations into account, and further, that, as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her, we think it clear that the statute sued upon does not embrace the plaintiff's intestate within its meaning; * * *."

In Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N. E. 638, 75 Am. S. R. 176, 48 L. R. A. 225, a leading case on the subject, the court said: "Appellant's counsel substantially admits that there is no precedent for the action. While it is true that this is not conclusive that the action may not be maintained, yet in view of the fact that, as said by Mr. Associate Justice O'Brien, similar circumstances must have before occurred, it is entitled to great weight, especially when the right to maintain the action is, to say the least, doubtful. Mr. Associate Justice O'Brien, in Walker v. Great Northern Railway Co. (28 L. R. Ir. 69) says: 'The law is, in some respects, a stream, that gathers accretions, with time, from new relations and conditions. But it is also a landmark that forbids advance on defined rights and engagements; and if these are to be altered,—if new rights and engagements are to be created,—that is the province of legislation and not decision.' In this we fully concur. That a child before birth is, in fact, a part of the mother and is only severed from her at birth, cannot, we think, be successfully disputed. The doctrine of the civil law and the ecclesiastical and admiralty courts, therefore, that an unborn child may be regarded as in esse for some purposes, when for its benefit, is a mere legal fiction, which, so far as we have been able to discover, has not been indulged in by the courts of common law to the extent of allowing an action by an infant for injuries occasioned before its birth. If the action can be maintained, it necessarily follows that an infant may maintain an action against its own mother for injuries occasioned by the negligence of the mother while pregnant

with it. We are of the opinion that the action will not lie."

In Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S. W. 2d 944, 97 A. L. R. 1513, the court said: "Good reason is found for denial of the right of recovery in the fact that in many cases it would be impossible to establish except by speculation or conjecture that the death or condition of the child was proximately caused by the injury. But, far worse than the indulgence of such speculation and conjecture and the insurmountable difficulty of satisfactorily proving viability, there would follow in the wake of this character of litigation many fictitious claims, with false testimony in their support, which the defendants would always find difficult and often impossible to refute. These considerations, we think, outweigh the denial of justice in the abstract to the meritorius case."

The following cases sustain the view that under the common law no action would lie for the recovery of damages for prenatal injuries: Ryan v. Public Service Co-ordinated Transport, 18 N. J. Misc. 429, 14 A. 2d 52; Drobner v. Peters, 232 N. Y. 220, 133 N. E. 567, 20 A. L. R. 1503; Gorman v. Budlong, 23 R. I. 169, 49 A. 704, 55 L. R. A. 118; Smith v. Luckhardt, 299 Ill. App. 100, 19 N. E. 2d 446; Newman v. City of Detroit, 281 Mich. 60, 274 N. W. 710; Buel v. United Railways Co., 248 Mo. 126, 154 S. W. 71, 45 L. R. A. N. S. 625, Ann. Cas. 1914C 613; Stemmer v. Kline, 128 N. J. L. 455, 26 A. 2d 489. See, also, Restatement, Torts, § 869, p. 404.

In our opinion a child born dead cannot maintain an action at common law for injuries received by it while in its mother's womb, and consequently the personal representative cannot maintain it under a wrongful death statute limiting such actions to those which would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof.

The contrary view regarding the rights of unborn

children is stated in the dissent of Justice Boggs in Allaire v. St. Luke's Hospital, *supra,* wherein it is said: "The law should, it seems to me, be, that whenever a child in utero is so far advanced in pre-natal age as that, should parturition by natural or artificial means occur at such age, such child could and would live separable from the mother and grow into the ordinary activities of life, and is afterwards born and becomes a living human being, such child has a right of action for any injuries wantonly or negligently inflicted upon his or her person at such age of viability, though then in the womb of the mother. That proposition having been established, that an adjustment of damages with the mother could not preclude the child would naturally and necessarily follow." The principal and only case holding that a child born dead has a cause of action for prenatal injuries is Verkennes v. Corniea, 229 Minn. 365, 38 N. W. 2d 838, 10 A. L. R. 2d 634. Other cases and texts indicating similar views are collected in the Verkennes case and will not be cited here.

We adhere to the rule that an unborn child is a part of the mother until birth and, as such, has no juridical existence. There are cases holding that a child born alive may maintain an action for prenatal injuries. Williams v. Marion Rapid Transit, Inc., 152 Ohio St. 114, 87 N. E. 2d 334, 10 A. L. R. 2d 1051; Jasinsky v. Potts, 153 Ohio St. 529, 92 N. E. 2d 809; Bonbrest v. Kotz, 65 F. Supp. 138. This question, however, is not before us and we leave it for determination if and when it arises. But the only case cited to us or that we have been able to find which holds that the personal representative of a child born dead could maintain an action for prenatal injuries is the Verkennes case. It makes no distinctions between cases where the child was born dead or alive after suffering prenatal injury. The Verkennes case is contrary to the great weight of authority in holding that the personal representative of a child born dead, which had suffered prenatal injuries, could main-

tain an action therefor. If the child had been born alive there would have been authority to sustain a recovery, although it appears at present to be a minority view. The viability theory appears to be vulnerable. It is true, of course, that medical science has found the means to sever a viable unborn child from the mother ordinarily without serious injury to the child; but even so, such medical development could not operate to change the common law rule that a child en ventre sa mere is considered a part of the mother insofar as a recovery for prenatal injuries are concerned. Medical science might accelerate the birth, but it cannot ipso facto change the rule. Consequently, medical science may accelerate the birth of a viable child and thereby accelerate the time it came into juridical existence as a person independent of the mother. But we can find no convincing authority that a child born dead ever became a person insofar as the law of torts is concerned.

In Lipps v. Milwaukee E. R. & L. Co., 164 Wis. 272, 159 N. W. 916, L. R. A. 1917B 334, the court aptly said: "The fact that the criminal law protects non-viable infants does not affect the question of their civil rights. The criminal law rests upon grounds of public policy and affects the public; the law of torts relates solely to the rights of private parties. So, too, the fact that for purposes of inheritance, taking under a will, etc., the existence of unborn children is recognized in law has no particular bearing upon the question of their right to recover for injuries sustained before birth. Neither does the medical or scientific recognition of the separate entity of an unborn child aid in determining its legal rights. The law cannot always be scientific or technically correct. It must often content itself with being merely practical."

Since no cause of action accrued to the child born dead, for injuries received before birth, none survived to the personal representative under the wrongful death statute. It would appear, therefore, that an action of this

character may not be maintained unless and until the right to bring it is afforded by legislative enactment. The trial court, therefore, properly sustained the demurrer to plaintiff's petition.

AFFIRMED.