BARBARA SMITH, PERSONAL REPRESENTATIVE OF THE ESTATE OF
BABY BOY SMITH, DECEASED, APPELLANT, V. COLUMBUS
COMMUNITY HOSPITAL, INC., A NEBRASKA CORPORATION,
APPELLEE.

387 N.W.2d 490

Filed May 23, 1986.    No. 84-891.

Richard D. Sievers of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellant.

Jewell, Gatz & Collins, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The plaintiff, Barbara Smith, personal representative of the estate of Baby Boy Smith, deceased, appeals the dismissal of the plaintiff's amended petition against Columbus Community Hospital, Inc. The hospital demurred to Smith's petition. When the hospital's demurrer was sustained and the plaintiff elected not to replead by further amended petition, plaintiff's action was dismissed by order of the district court for Platte County. From such dismissal plaintiff appeals. "On reviewing the sustaining of a demurrer, this court must treat as undisputed the facts as alleged in the petition." *Blanchard v. White*, 217 Neb. 877, 880, 351 N.W.2d 707, 709-10 (1984).

In February 1982 Barbara Smith was diagnosed as pregnant, with an expected date of delivery of October 8, 1982. Being in active labor on October 17, Barbara Smith was admitted to the

defendant hospital at 5:45 a.m. on that date. At 7:10 a.m. on October 17, Barbara Smith delivered a stillborn male infant at the defendant hospital. Plaintiff's petition alleges that the hospital, through its employees, was guilty of negligence which was the proximate cause of the death of Baby Boy Smith. The plaintiff claimed that the labor room nurse was negligent in failing to properly monitor fetal heart tones, failing to promptly and properly notify plaintiff's physician of her admission, and failing to assemble the hospital's emergency surgical team at a time when the life of Baby Boy Smith could have been saved by performing an emergency cesarean section. Plaintiff, as personal representative, sought special damages for the funeral expenses and general damages for loss of comfort, companionship, and society regarding Baby Boy Smith. The hospital demurred and alleged that the amended petition did not state facts sufficient to constitute a cause of action. Neb. Rev. Stat. § 25-806 (Reissue 1979). As previously indicated, after the court sustained the hospital's demurrer and allowed time for further amendment, the plaintiff elected to stand on her amended petition to which the demurrer had been sustained, and the plaintiff's action was dismissed.

The sole question raised in this appeal is whether or not the personal representative of the estate of an unborn child, as a viable fetus which dies prior to birth as the result of another's negligence, has a cause of action for damages recoverable under the Nebraska wrongful death statute.

Neb. Rev. Stat. § 30-809 (Reissue 1979) provides:

Whenever the death of a person shall be caused by the wrongful act, neglect or default, of any person, company or corporation, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

The question raised in the present appeal was raised for the

first time in *Drabbels v. Skelly Oil Co.*, 155 Neb. 17, 50 N.W.2d 229 (1951), where the trial court sustained a demurrer to the petition of the administrator of the estate of Coleen Ann Drabbels, an unborn child born dead as the result of an explosion allegedly caused by negligence on the part of the defendant oil company. In *Drabbels, supra*, plaintiff's petition alleged that at the time of the explosion Audrey Drabbels was 8 months pregnant and that the unborn child was viable and capable of separate and independent existence. In affirming the judgment of the trial court in sustaining the defendant's demurrer and dismissing the plaintiff's petition, we stated at 19, 21-24, 50 N.W.2d at 230-32:

> The wrongful death statute is plain in stating that the right of action created by it exists only in cases wherein the injured person could himself have maintained an action for damages had he lived. . . .
>
> . . . .
>
> In our opinion a child born dead cannot maintain an action at common law for injuries received by it while in its mother's womb, and consequently the personal representative cannot maintain it under a wrongful death statute limiting such actions to those which would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof.
>
> . . . .
>
> We adhere to the rule that an unborn child is a part of the mother until birth and, as such, has no juridical existence. . . . [W]e can find no convincing authority that a child born dead ever became a person insofar as the law of torts is concerned.
>
> . . . .
>
> Since no cause of action accrued to the child born dead, for injuries received before birth, none survived to the personal representative under the wrongful death statute. It would appear, therefore, that an action of this character may not be maintained unless and until the right to bring it is afforded by legislative enactment.

Some 26 years later, the same question raised and answered in

*Drabbels v. Skelly Oil Co., supra*, was again brought before this court in *Egbert v. Wenzl*, 199 Neb. 573, 260 N.W.2d 480 (1977), where the trial court sustained a demurrer to the petition of the administratrix of the estate of Baby Girl Egbert, a viable fetus born dead as the result of alleged negligence of the defendant in operation of a motor vehicle. In affirming the trial court's dismissal of the petition, we held:

> The issue in this case, not one of first impression in Nebraska, is whether an action for the wrongful death of a stillborn fetus may be maintained under section 30-809, R.R.S. 1943. We conclude that it may not, and adhere to the rule set forth in Drabbels v. Skelly Oil Co., 155 Neb. 17, 50 N.W.2d 229 (1951).
>
> . . . .
>
> . . . The right to maintain an action for wrongful death did not exist under the common law, and exists in Nebraka [sic], as in other states, solely by statute. [Citations omitted.]
>
> . . . .
>
> . . . In view of the common law rule that an unborn fetus was not a person insofar as the law of torts is concerned, we think that if there had been an intention to create an action for the wrongful death of a viable fetus it would have been specifically so stated by the Legislature when the wrongful death statute was enacted. In Drabbels, this court noted that such an action "may not be maintained unless and until the right to bring it is afforded by legislative enactment." In the 26 years since Drabbels was decided, the Nebraska Legislature has not acted to include a viable fetus within the definition of person under section 30-809, R.R.S. 1943. Plaintiffs have not directed our attention to any evidence of legislative intent to include recovery for the death of a viable fetus under section 30-809, R.R.S. 1943, and we have found none.
>
> We express no opinion with respect to the existence of the fetus as a person in either the philosophical or scientific sense. We hold only that the Legislature did not exhibit the intention to include a viable fetus within the scope of our wrongful death statute.

*Egbert v. Wenzl, supra* at 573-74, 576, 260 N.W.2d at 481-82. As previously expressed twice prior to the present appeal, if a viable fetus is to be included within the scope of the Nebraska wrongful death statute, § 30-809, the right to recover under the wrongful death statute is still a matter for legislative enactment so expressing and not a matter for this court to include in the wrongful death statute a cause of action of a child born dead.

The district court was correct in sustaining the demurrer and dismissing plaintiff's amended petition based on an action for wrongful death.

AFFIRMED.

SHANAHAN, J., dissenting.

By uncritically perpetuating the incorrect result reached in *Drabbels v. Skelly Oil Co.*, 155 Neb. 17, 50 N.W.2d 229 (1951), and *Egbert v. Wenzl*, 199 Neb. 573, 260 N.W.2d 480 (1977), this court has given new meaning to Khayyam's words:

The Moving Finger writes; and, having writ,
Moves on; nor all your Piety nor Wit
Shall lure it back to cancel half a Line.

[T]he antiquity of a rule is no measure of its soundness. "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Address by O.W. Holmes, 10 Harv. L. Rev. 457, 469 (Jan. 8, 1897).

*Commonwealth v. Cass,* 392 Mass. 799, 805-06, 467 N.E.2d 1324, 1328 (1984).

As pointed out by Sheldon R. Shapiro, annotator for the work appearing at 84 A.L.R.3d 411 (1978), the question involves a cause of action "where an unborn child was viable (that is, capable of independent existence apart from its mother) at the time of sustaining injuries resulting in prenatal death." *Id.* at 415.

When the majority shores up its opinion by reiterating there is "no convincing authority" for recognizing the cause of action today denied by this court, there is disregard of an ever-growing body of law throughout the United States.

According to the Supreme Court of Pennsylvania in *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985), decided on December 4, 1985, from 1949 to the present, 29 states and the District of Columbia have recognized that "survival and wrongful death actions lie by the estates of stillborn children for fatal injuries they received while viable children en ventre sa mere." 501 A.2d at 1086-87. The Supreme Court of Pennsylvania concluded that, based on "the body of medical knowledge" existing today, "the reasons formerly relied on to deny [a cause of action for prenatal injury causing stillbirth of a viable fetus] no longer are persuasive." 501 A.2d at 1087.

While the majority of this court clings to a rule having its inception in a lack of information, advances in medical science have now supplied evidence of causal connections between alleged prenatal negligence and damage. See, W. Keeton, Prosser and Keeton on the Law of Torts, *Limited Duty* § 55 (5th ed. 1984). If courts disregard developments in science relative to causes of action, motor vehicle negligence law will have to be reconsidered, because courts will have to ignore existence of the wheel.

In his scholarly opinion unanimously adopted by the Supreme Court of Arizona in *Summerfield v. Superior Court, Maricopa Cty.,* 144 Ariz. 467, 698 P.2d 712 (1985), decided April 24, 1985, Justice Feldman traces the rule, today reaffirmed by this court's majority construing Nebraska's wrongful death statute, directly to the nascent 19th-century case of *Baker v. Bolton,* 1 Camp. 493, 170 Eng. Rep. 1033 (1808), which probably emerged from the enlightenment of the 18th century. In *Summerfield* the Arizona Supreme Court, recognizing that *person* encompasses a stillborn, viable fetus for the purpose of Arizona's wrongful death statute, held at 477, 479, 698 P.2d at 722, 724:

> The majority rule, which now recognizes that a death action will lie under the circumstances present here, acknowledges that the common law has evolved to the point that the word "person" does usually include a fetus capable of extrauterine life. . . . The majority finds no logic in the premise that if the viable infant dies

immediately before birth it is not a "person" but that if it dies immediately after birth it is a "person."

. . . We believe that the common law now recognizes that it is the ability of the fetus to sustain life independently of the mother's body that should determine when tort law should recognize it as a "person" whose loss is compensable to the survivors. . . .

. . . .

. . . By upholding the right of recovery, we join the majority and better reasoned view.

Nebraska should have become the 31st jurisdiction recognizing the cause of action again rejected by this court.

From our orbit in a jurisprudential galaxy, today we have rocketed backward into a black hole and a fate uncertain.