DENNIS W. NIPPERT, APPELLANT, V. SHINN FARM CONSTRUCTION
COMPANY, APPELLEE.
388 N.W.2d 820
Filed June 20, 1986.   No. 85-682.

T.J. Hallinan of Law Offices of Cobb, Hallinan & Lefler, P.C., for appellant.

Dennis R. Riekenberg of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Dennis W. Nippert appeals the dismissal of a suit filed against his employer, Shinn Farm Construction Company, in the Nebraska Workers' Compensation Court. Nippert seeks compensation for total temporary disability and permanent partial disability suffered as a result of injuries sustained in a tornado on October 18, 1979.

A single judge of the compensation court found, under the "act of nature" doctrine, that the accident which caused Nippert's injury did not "arise out of" his employment as required for recovery under the Workers' Compensation Act, Neb. Rev. Stat. § 48-101 (Reissue 1984). On rehearing, a three-judge panel affirmed the order of dismissal. We reverse.

Nippert was employed by Shinn Farm Construction Company on October 18, 1979. On this date he and other workers were erecting a hog shed on a farm near Wamego, Kansas. The workers were inside the nearly completed building, preparing to leave the jobsite for the day, when a tornado approached the area at approximately 6 p.m. The weather

service had issued tornado warnings, but the construction workers had received no such information. The wind force inside the building was so strong that the workers were unable to move, a phenomenon apparently resulting from the fact that the doors on the southeast and northeast corners of the building had not yet been installed.

At some point the walls of the 40- by 60-foot building collapsed, and the roof fell to the ground intact. Miraculously, no one was injured when the building fell. The wind then subsided for a few moments, but about a minute later the tornado picked Nippert up and hurled him to the ground some 30 feet away. Nippert's leg was fractured, and he later developed back problems.

The storm system that hit the jobsite injured 11 people and caused extensive property damage throughout northeast Kansas. On the farm where the company was erecting the hog shed, Roger Shinn observed extensive damage to two silos, the destruction of a large machine shed and barn, and damaged machinery and equipment, including a truck which was thrown into a feedlot. The storm had also destroyed or damaged buildings on two adjacent farms. The tornado's path was $1/2$ to $1\,1/2$ miles wide, and it traveled approximately 58 miles.

Nippert was treated for his injuries, but he was unable to return to work until November 1980. Shinn Farm Construction Company voluntarily paid Nippert's medical expenses as well as temporary total disability benefits and permanent partial disability benefits based on a 20-percent permanent disability of his left leg. It was not until Nippert filed a petition seeking additional benefits that the company raised a question of liability.

Based upon the increased risk doctrine, the Nebraska Workers' Compensation Court rejected Nippert's claim for benefits. We recently reviewed this doctrine in McGinn v. Douglas County Social Services Admin., 211 Neb. 72, 317 N.W.2d 764 (1982). In a 4-to-3 opinion, the majority held that an employee is entitled to benefits under the provisions of the Nebraska Workers' Compensation Act, § 48-101, only when an accident arises both out of and in the course of employment: "The term 'arising out of' describes the accident and its origin,

cause, and character, i.e., whether it resulted from the risks arising from within the scope or sphere of the employee's job." 211 Neb. at 75, 317 N.W.2d at 766-67. An injury caused by the elements arises out of employment only if the employee is exposed to a different hazard than others generally in the area where the injury occurred. *McGinn, supra.*

Nippert's theory on appeal is twofold. First, he asks this court to overrule the increased risk test and adopt the positional risk test. Second, if the court continues to apply the increased risk test, Nippert asks for reversal on the grounds that the dismissal was against the great weight of evidence that he was exposed to an increased risk of injury in his work environment and, therefore, that his injuries arose out of his employment.

We agree with Nippert's first theory, and to the extent that *McGinn* and earlier cases are inconsistent with it, they are overruled. In *McGinn* we were asked to adopt the positional risk test, the rationale being that an accident arises out of employment when an employee is where he is required to be at the time the act of nature occurs and causes the employee's injury. We rejected the argument and affirmed the increased risk doctrine as the law in this state. The increased risk doctrine requires an employee to demonstrate that his employment duties expose him to a greater risk or hazard than that to which the general public in the area is exposed. *Crow v. The Americana Crop Hail Pool, Inc.*, 176 Neb. 260, 125 N.W.2d 691 (1964).

After careful consideration we have concluded that the better rule is the positional risk test espoused by the dissent in *McGinn*. Under this theory an employee's injuries are compensable as long as his employment duties put him in a position that he might not otherwise be in which exposes him to a risk, even though the risk is not greater than that of the general public. In 1 A. Larson, The Law of Workmen's Compensation § 8.12 at 3-23 (1985), the positional risk test is stated as follows:

"[W]hen one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that

accident is one 'arising out of' the employment of the person so injured."

The record shows that Nippert's employment required him to be in the area where the tornado struck. The record also reflects that the storm caused Nippert's injuries. The judgment of the Workers' Compensation Court is reversed.

REVERSED.

WHITE, J., participating on briefs.

CAPORALE, J., dissenting.

I dissent and lament the wound inflicted by the majority upon a venerable but endangered friend: The Rule of Law.

Reasonable minds schooled in the law are certainly entitled to differ as to whether the "increased risk" or the "positional risk" rule is the better reasoned one. Thus, were this a case of first impression, a majority of this court would have both the right as well as the duty to choose one rule over the other. But this is not a case of first impression. Nor is it a case dealing with a nonstatutory principle of common law.

The Legislature enacted the compensation act 73 years ago. 1913 Neb. Laws, ch. 198, § 1, p. 579. Thirteen years later, this court interpreted the "arising out of and in the course of" language of the act for the first time. *Gale v. Krug Park Amusement Co.*, 114 Neb. 432, 437, 208 N.W. 739, 741 (1926), determined that to be compensable an injury caused by the elements must result from a hazard "greater than that to which the public generally is subjected." During the intervening 60 years, the Legislature has seen fit to let that consistently applied judicial interpretation of its enactment stand. The most recent application was in *McGinn v. Douglas County Social Services Admin.*, 211 Neb. 72, 317 N.W.2d 764 (1982).

The controlling rule of law is that where a judicial interpretation of a statute has not evoked a legislative amendment, it is to be presumed that the Legislature has acquiesced in the court's determination of the legislative intent. *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 333 N.W.2d 646 (1983). Without expressly so stating, we most recently applied that rule in *Smith v. Columbus Community Hosp.*, 222 Neb. 776, 387 N.W.2d 490 (1986), as the result of which we left undisturbed our earlier interpretation of the

wrongful death statute.

It seems to me we are not free to ignore the legislative acquiescence rule at our whim. Such a selective application of any rule is arbitrary and capricious and robs the law of the predictability it needs.

The actions of our Legislature quickly dispel any notion that it is unaware of what this court does. The most recent example that the Legislature pays attention to our rulings is its reaction to *Vacek v. Ames*, 221 Neb. 333, 377 N.W.2d 86 (1985). In less than 4 months the Legislature enacted a statute calculated to do away with the common-law causes of action for criminal conversation and alienation of affections which *Vacek v. Ames* preserved. 1986 Neb. Laws, L.B. 877. Another example of legislative awareness is found in the history of the discovery rule as applied to medical malpractice cases. In *Spath v. Morrow*, 174 Neb. 38, 115 N.W.2d 581 (1962), this court held that the statute of limitations did not begin to run until the patient discovered, or in the exercise of reasonable diligence should have discovered, the malpractice. Ten years later, the Legislature responded by limiting the period of discovery to 10 years. 1972 Neb. Laws, L.B. 1132, § 1; *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982). That is the way our system of government is designed to work. In this instance the esteemed members of the majority have, in my humble opinion, usurped the function of the Legislature.

The only significant thing which has changed since this court's first interpretation of the "arising out of and in the course of" language of the compensation act is the composition of this court. I respectfully submit that if the law depends upon nothing more than the predilections of those who happen to sit on this tribunal at any given time, there is no law.

The only mistake the compensation court made was to apply the law as this court had declared it to be. I would affirm.

BOSLAUGH and HASTINGS, JJ., join in this dissent.