REQUESTED BY: Senator Mike Foley Nebraska State Legislature
QUESTION: Could a person successfully litigate a civil action for the wrongful death of an unborn child in this state?
CONCLUSION: Probably not.
You observe that most of the states have established the right to maintain civil wrongful death actions in the case of unborn children. You further point out that with the exception of Tennessee, which created the right by legislative action, the states did this by judicial decision. Finally, you cite to the passage of LB 824 (97th. Leg., 2nd Sess. 2002), the Homicide of the Unborn Child Act, which, with certain exceptions, makes it a crime to kill or cause the death of an unborn child. In view of these things, you ask whether a person could successfully bring a civil action for the wrongful death of an unborn child in Nebraska, or whether legislation would be necessary to establish such a cause of action.
We believe it unlikely that a person could successfully litigate a wrongful death suit for the death of an unborn child in this state. The Nebraska Supreme Court has consistently held that legislative action would be required before a wrongful death action would be recognized in such circumstances. Smith v. Columbus Community Hospital, Inc.,222 Neb. 776, 387 N.W.2d 490 (1986), Egbert v. Wenzl, 199 Neb. 573,260 N.W.2d 480 (1977), and Drabbels v. Skelly Oil Co., 155 Neb. 17,50 N.W.2d 229 (1951). The court reasoned that at common law an unborn child was not recognized as a person insofar as the law of torts was concerned and that while the legislature was free to change that, it had not done so. Quoting from its 1977 Egbert decision, the court wrote, "[i]n the 26 years since Drabbels was decided, the Nebraska legislature has not acted to include a viable fetus within the definition of person under section 30-809, R.R.S. 1943 [the wrongful death statute]." Smith,222 Neb. at 779, 387 N.W.2d at 492.
At the time Smith was decided the legislature had clearly indicated an intention to protect an unborn fetus to the extent allowed by U.S. Supreme Court decisions. See Neb. Rev. Stat. § 28-325 (1) (1995). This apparently was not enough to convince the court to veer from its prior course. Nor was the court persuaded by scientific advances which had made it possible to supply evidence of causation between alleged prenatal injury and damage. That a majority of the states had recognized wrongful death actions for prenatal injury causing stillbirth of a viable fetus carried no weight, either. 222 Neb. at 781, 387 N.W.2d at 493 (dissent of Judge Shanahan). Drabbels, Egbert and Smith clearly placed the ball in the legislature's court, but now, 16 years after Smith, and 51 years after Drabbels, the wrongful death statute is essentially unchanged. Consequently, if once again confronted with the question, the court is apt to invoke the proposition that "[w]here a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent." Paulk v. Central Laboratory Associates, P.C., 262 Neb. 838, 851, 636 N.W.2d 170, 181 (2001) (citations omitted).
Where the cause of action is a legislatively designed one and the legislature has apparently acquiesced in the court's interpretation of that design, the court will generally not engage in its own remodeling. It is doubtful that the enactment of the Homicide of the Unborn Child Act will cause the court to depart from its prior decisions. Holding a person accountable to the state under the criminal laws presents different issues than are involved in the civil tort arena. The court will probably be of the view that if the legislature wanted to expand the wrongful death cause of action to encompass injury to a fetus, it was, and remains, the legislature's prerogative.
Sincerely,
 DON STENBERG Attorney General
 Mark D. Starr Assistant Attorney General
Approved:
_________________________________ Attorney General
cc: Patrick O'Donnell Clerk of the Legislature