Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/19/2016 09:06 AM CDT

- 199 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

Yessica Y. Panameno Maradiaga,
appellant, v. Specialty Finishing
and Travelers Indemnity
Company, appellees.
___ N.W.2d ___

Filed July 19, 2016.   No. A-15-845.

1. **Workers' Compensation: Appeal and Error.** An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award.

2. ____: ____. An appellate court will not disturb a compensation court judge's findings of fact unless clearly wrong.

3. ____: ____. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

4. **Workers' Compensation: Proof.** In a workers' compensation case, the plaintiff must establish by a preponderance of the evidence that the injury for which an award is sought arose out of and in the course of employment.

5. ____: ____. The two phrases "arising out of" and "in the course of" in Neb. Rev. Stat. § 48-101 (Reissue 2010) are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist.

6. ____: ____. The phrase "arising out of," as used in Neb. Rev. Stat. § 48-101 (Reissue 2010), describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job; the phrase "in the course of," as used in § 48-101, refers to the time, place, and circumstances surrounding the accident.

- 200 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

7. **Workers' Compensation.** All risks causing injury to an employee can be placed within three categories: (1) employment related—risks distinctly associated with the employment; (2) personal—risks personal to the claimant, e.g., idiopathic causes; and (3) neutral—a risk that is neither distinctly associated with the employment nor personal to the claimant.

8. ____. Under the positional risk doctrine, when an employee, in the course of his or her employment, is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his or her employment, that accident is one "arising out of" the employment of the person so injured.

9. ____. Generally, a risk may be classified as "neutral" for either of two reasons: (1) the nature of the risk may be known, but may be associated neither with the employment nor the employee personally, or (2) the nature of the cause of harm may be simply unknown.

10. ____. When there is at least some evidence of a possibility of a personal or idiopathic factor contributing to a fall, the fall is not properly categorized as a purely unexplained fall.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Terry M. Anderson and David M. O'Neill, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellant.

Patrick B. Donahue and Dennis R. Riekenberg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

Pirtle and Bishop, Judges.

Bishop, Judge.

Yessica Y. Panameno Maradiaga appeals from an order of the Nebraska Workers' Compensation Court dismissing with prejudice her amended petition for workers' compensation benefits against her employer, Specialty Finishing, and its insurer, Travelers Indemnity Company. Maradiaga challenges the court's determination that the ankle fracture she sustained in her employer's parking lot did not "arise out of" her employment. For the following reasons, we affirm.

- 201 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

## BACKGROUND

On May 18, 2014, Maradiaga was employed as a "box feeder" at Specialty Finishing. She arrived for her 12-hour shift just prior to 6 p.m., parking in her employer's parking lot. At trial, Maradiaga testified she exited her car and fell down while walking in the parking lot. At the time, the only item she was carrying was a small lunchbox. She then returned to her car and sat down. When she got up again, she felt pain and could not walk. She summoned another employee's help and was transported to the hospital. She was diagnosed with a "left lateral malleolus fracture with medial clear space widening," otherwise known as an "unstable ankle fracture." Maradiaga underwent surgery to repair the fracture on May 23.

One of the exhibits Maradiaga offered into evidence at trial was the deposition of Myrna Partida, who worked in human resources at Specialty Finishing. Attached to Partida's deposition was a transcript of the recorded statement Maradiaga gave to an insurance claims adjuster on June 2, 2014. When the adjuster asked Maradiaga to explain how she injured her ankle, she said she got out of her car, took one step, and her foot twisted. She fell to the ground, then got up and sat back down in her car. When she exited her car and began to walk, the pain was too great to continue.

Partida testified at trial that on the day following the incident, she spoke with Maradiaga on the telephone. According to Partida, Maradiaga told her she got out of her car, stood up, and felt pain in her leg. She then "fell back down." When she "got back up" and started walking, the pain was "really bad," so she summoned another employee to assist her. She was then taken to the hospital. According to Partida, Maradiaga described the injury as "strange," because she put both feet on the ground and "just felt this pain." Insurance forms that Partida completed on May 29 and 30, 2014, indicated that Maradiaga reported feeling "pain in her foot" upon exiting her car and placing her feet on the ground.

- 202 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

The medical records received into evidence also contained accounts of the incident. The emergency room records indicate Maradiaga twisted her left ankle getting out of her car at work. They further indicate she did not report falling. Records from a physician's office visit on May 21, 2014, state that Maradiaga was exiting her car and slipped, causing her feet to go out from under her. An orthopedist's records dated May 23, 2014, indicate Maradiaga twisted her ankle in her employer's parking lot.

Following trial, in its written order entered on August 21, 2015, the compensation court found that Maradiaga was exiting her car in Specialty Finishing's parking lot when she took a step, twisted her ankle, and felt pain. The court found that although Maradiaga then fell to the ground, she "injured her left ankle before falling to the ground." The court indicated that "[a]s best [it could] discern, [Maradiaga] suffered no injuries from actually falling." The court found Maradiaga had no preexisting condition that contributed to her injury. It further found that Maradiaga's employment did not contribute to the injury:

> [Maradiaga] was merely walking. She did not trip. She did not slip. There was nothing in the parking lot that created a hazard for her. She was not carrying anything heavy that stressed her body or her ankle, specifically. [Maradiaga] broke her ankle while taking a step. It just happened to occur at work. Work did not contribute to her injury, so Specialty [Finishing] should not be liable for it. The Court finds [Maradiaga] did not suffer an injury that arose out of her employment with Specialty [Finishing].

The court specifically determined the case was not controlled by *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000), which involved application of the positional risk doctrine to an unexplained fall on an employer's premises. The court explained that Maradiaga did not sustain injuries during

- 203 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

an unexplained fall, but fell after injuring her ankle while taking a step.

Based on its determination that Maradiaga's injury did not arise out of her employment, the compensation court dismissed with prejudice Maradiaga's amended petition for compensation benefits, and Maradiaga timely appealed to this court.

## ASSIGNMENT OF ERROR

Maradiaga assigns that the compensation court erred in determining that her injury did not arise out of her employment.

## STANDARD OF REVIEW

[1-3] An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Logsdon v. ISCO Co., supra*. A reviewing court will not disturb a compensation court judge's findings of fact unless clearly wrong. See *id*. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id*.

## ANALYSIS

[4] The Nebraska Workers' Compensation Act (Act) provides that "[w]hen personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer . . . ," as long as the employee was not willfully negligent at the time of receiving the injury. Neb. Rev. Stat. § 48-101 (Reissue 2010). The Act defines "[a]ccident" as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of

- 204 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

an injury." Neb. Rev. Stat. § 48-151(2) (Reissue 2010). The Act places the burden of proof on the claimant "to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment." *Id*. "There is no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment." *Id*.

[5,6] "The two phrases 'arising out of' and 'in the course of' in § 48-101 are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist." *Zoucha v. Touch of Class Lounge*, 269 Neb. 89, 93, 690 N.W.2d 610, 614-15 (2005). The phrase "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job; the phrase "in the course of" refers to the time, place, and circumstances surrounding the accident. *Id*. Whether an injury arose out of and in the course of employment must be determined from the facts of each case. *Murphy v. City of Grand Island*, 274 Neb. 670, 742 N.W.2d 506 (2007).

In this case, it is undisputed that Maradiaga sustained an injury "in the course of" her employment. See *Zoucha v. Touch of Class Lounge, supra* (employee who is injured in accident on his or her employer's premises while coming to or leaving work is injured within course of his or her employment). The issue before us is whether Maradiaga has satisfied the "arising out of" prong of § 48-101.

[7] We begin by looking to the three categories into which all risks causing injury to an employee can be placed. See *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000). The first category, employment-related risks, includes "risks distinctly associated with the employment." *Id*. at 628, 618 N.W.2d at 672. Injury caused by risks falling within this category is "universally compensable." *Id*. at 629, 618 N.W.2d at 672. The second category, personal risks, encompasses "risks

- 205 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

personal to the claimant, e.g., idiopathic causes." *Id.* at 628, 618 N.W.2d at 672. Injury caused by personal risks is "universally noncompensable." *Id.* at 629, 618 N.W.2d at 672. The third category, neutral risks, includes risks that are "neither distinctly associated with the employment nor personal to the claimant." *Id.* In Nebraska, injury arising from neutral risks is "generally compensable." *Id.*

Maradiaga argues that because her injury "was not shown to be related to any personal condition . . . nor any other personal activity, the injury had a 'neutral' cause." Brief for appellant at 7. She maintains she is entitled to compensation because Nebraska has adopted the "'positional risk' doctrine," under which "[a]n injury that has a 'neutral' cause, but is otherwise incurred 'in the course' of employment, is presumed to 'arise out of' that employment." *Id.* In order to address Maradiaga's argument, it is necessary to provide some background on the positional risk doctrine and its limited application in Nebraska law.

The positional risk doctrine is one of several approaches to determining whether an employee's injury arises out of his or her employment. 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law §§ 3.01 and 3.05 (2016). As a point of reference, we note that the "prevalent" approach in the United States is still the "increased risk doctrine." *Id.*, § 3.02 at 3-6. "The increased risk doctrine requires an employee to demonstrate that his employment duties expose him to a greater risk or hazard than that to which the general public in the area is exposed." *Nippert v. Shinn Farm Constr. Co.*, 223 Neb. 236, 238, 388 N.W.2d 820, 822 (1986).

[8] According to Larson, only "[a] few courts have accepted the full implications" of the positional risk doctrine, 1 Larson & Larson, *supra*, § 3.05 at 3-7, which has been articulated as follows:

"'[W]hen one in the course of his employment is reasonably required to be at a particular place at a particular

- 206 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one "arising out of" the employment of the person so injured.'"

*Nippert v. Shinn Farm Constr. Co.*, 223 Neb. at 238-39, 388 N.W.2d at 822 (quoting treatise passage currently found at 1 Larson & Larson, *supra*, § 5.01[5]).

The positional risk doctrine is usually "approved and used in very particular situations." 1 Larson & Larson, *supra*, § 3.05 at 3-7. The common characteristic among the situations to which it applies is that "the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he or she was injured by some neutral force, meaning by 'neutral' neither personal to the claimant nor distinctly associated with the employment." *Id.*, § 3.05 at 3-8.

[9] Generally, a risk may be classified as "'neutral'" for either of two reasons: (1) "[t]he nature of the risk may be known, but may be associated neither with the employment nor the employee personally," or (2) "the nature of the cause of harm may be simply unknown." *Id.*, § 7.04[1][a] at 7-25. Examples of neutral risks of the first type are stray bullets, lightning, or hurricanes, see *id.*, § 4.03, while the most common example of a neutral risk of the second type is a purely unexplained fall, *id.*, § 7.04[1][a].

The Nebraska Supreme Court has applied the positional risk doctrine in cases involving both types of neutral risks. *Nippert v. Shinn Farm Constr. Co., supra*, involved a neutral risk of the first type—a known risk neither associated with the employment nor the employee personally. In *Nippert*, a farm employee was injured on the job when a tornado picked him up and "hurled him to the ground some 30 feet away." 223 Neb. at 237, 388 N.W.2d at 821. The compensation court denied benefits, relying on *McGinn v. Douglas County Social*

- 207 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

*Services Admin.*, 211 Neb. 72, 317 N.W.2d 764 (1982), in which the court applied the increased risk doctrine to a case involving similar facts. Reversing the compensation court's denial of benefits, the court in *Nippert* overruled *McGinn*, holding that the positional risk doctrine was the "better rule." *Nippert v. Shinn Farm Constr. Co.*, 223 Neb. at 238, 388 N.W.2d at 822. It is clear that a tornado is a known neutral risk which is neither associated with the employment nor the employee personally. In *Nippert*, the court concluded the employee's injury was compensable because under "the positional risk test . . . '"any other person then and there present would have met"'" with the same accident "'"irrespective"'" of employment, and the claimant's employment required him to be in the area where the tornado struck. 223 Neb. at 238, 388 N.W.2d at 822.

The Nebraska Supreme Court next applied the positional risk doctrine in *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000), a case involving a neutral risk of the second type—where the nature of the cause of harm may be simply unknown. In *Logsdon*, an employee was walking on his employer's premises during a morning break. He turned around to talk to some coworkers who were walking behind him, and the next thing he knew, he was in an ambulance. There was no other evidence indicating how the employee fell, but it was undisputed that he fell and fractured his skull while in the course of his employment.

In holding that the employee's injury was compensable, the court in *Logsdon* discussed the three categories of risk and framed the issue before it as "whether an injury without an explanation is a compensable neutral injury." 260 Neb. at 629, 618 N.W.2d at 672. The court indicated it had already "adopted the positional risk doctrine in the context of injuries arising from neutral risks." *Id*. at 629, 618 N.W.2d at 673, citing *Nippert v. Shinn Farm Constr. Co.*, 223 Neb. 236, 388 N.W.2d 820 (1986). The court then reasoned that "because

- 208 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

the cause of an unexplained fall is unknown, the fall must be attributed to a neutral risk, i.e., one neither distinctly personal to the claimant nor associated with the claimant's employment." *Logsdon v. ISCO Co.*, 260 Neb. at 632, 618 N.W.2d at 674. After reaffirming its holding that the positional risk doctrine applies "in the case of an injury arising from a neutral risk," the court concluded that because the employee "would not have been at the place of injury *but for* the duties of his employment," a presumption arose that "his injuries 'arose out of' his employment." *Id*. The court further noted that the "presumption was not rebutted by evidence of any idiopathic cause or other risk personal to the claimant." *Id*.

The case before us does not present a neutral risk of the type presented in *Nippert v. Shinn Farm Constr. Co., supra*, or in *Logsdon v. ISCO Co., supra*. Unlike the facts in *Nippert*, we are not dealing with a known neutral risk which is neither associated with the employment nor the employee personally— the kind of risk that any other person then and there present would have met with irrespective of employment. Stray bullets and tornados are examples of this type of known neutral risk; twisted ankles are not.

However, this case is also not one in which "the nature of the cause of harm" is "unknown" in the same way that the cause of a purely unexplained fall is "unknown." See *Logsdon v. ISCO Co.*, 260 Neb. 624, 630, 618 N.W.2d 667, 673 (2000). The only evidence in *Logsdon* was that the employee turned around while walking, and the next thing he knew he was in an ambulance. There were a myriad of things that might have contributed to the employee's fall, but no evidence to establish what actually did. Given this absence of evidence, the positional risk doctrine was the only avenue available to the employee to establish the "arising out of" requirement of § 48-101, and the Nebraska Supreme Court endorsed its application under those circumstances. *Logsdon v. ISCO Co., supra*.

- 209 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

The court explained that "'[i]n a pure unexplained-fall case, there is no way in which an award can be justified as a matter of causation theory except by a recognition that [the positional risk doctrine's] but-for reasoning satisfies the "arising" requirement. . . .'" *Id.* at 631, 618 N.W.2d at 673-74, quoting 1 Larson & Larson, *supra*, § 7.04[1][a].

Here, Maradiaga faced no similar hurdle in proving that her injury arose out of her employment. Based upon the compensation court's findings, Maradiaga took a step, twisted her ankle, and felt pain. She did not wake up in an ambulance or hospital, not knowing what happened to her. If Maradiaga's employment contributed to her injury in some way, she could have presented evidence to establish that fact. If, for example, she stepped on a rock or a slick spot in the parking lot which caused her to twist her ankle, she could have so testified. However, Maradiaga presented no such evidence, and it is difficult to imagine that any risk of employment caused her to twist her ankle, or otherwise caused her bone to fracture, as she stepped out of her car. This type of injury does not satisfy the type of "unknown" cause of harm that warranted application of the positional risk doctrine in *Logsdon v. ISCO Co.*, 260 Neb. at 630, 618 N.W.2d at 673, where the employee woke up in an ambulance.

The distinction between this case and *Logsdon v. ISCO Co., supra*, becomes clearer when one considers that the mechanism of the fall in *Logsdon* is what was unknown. The employee turned while walking, and the next thing he knew he was in an ambulance. We do not know if the employee tripped over a crack in the sidewalk, stumbled over a rock, or simply tripped over his own feet. Perhaps because the absence of evidence made it impossible to rule out the possibility that a risk of employment contributed to the fall, the court permitted the employee to rely on the positional risk doctrine to satisfy the "arising out of" requirement of § 48-101: "[I]t logically follows that if the 'in the course of' employment test

- 210 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

is met in a purely unexplained-fall case, the injury will be presumed to 'arise out of' the employment." *Id*. at 632, 618 N.W.2d at 674.

In our case, by contrast, the mechanism of the twisted ankle is not a mystery. As the compensation court found: "[Maradiaga] was merely walking. She did not trip. She did not slip. There was nothing in the parking lot that created a hazard for her. She was not carrying anything heavy that stressed her body or her ankle, specifically. [Maradiaga] broke her ankle while taking a step." If Maradiaga's employment did contribute to the injury in some way, there was nothing to prevent her from establishing that fact. This case did not involve a completely unexplained fall like the situation in *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000), and the Act places the burden of proof on the claimant "to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment." § 48-151(2).

Maradiaga at one point in her brief suggests that "perhaps the fall did cause the injury here, or exacerbate it." Brief for appellant at 13. In this passage, Maradiaga appears to be contesting the compensation court's finding that her injury occurred before her fall, seemingly in an attempt to fit this case within *Logsdon v. ISCO Co., supra*. However, the compensation court's finding that the injury preceded the fall was not clearly wrong, as we discuss next.

Although Maradiaga testified at trial that she fell in the parking lot, returned to her car, and then felt pain upon standing, her testimony was inconsistent with much of the remaining evidence. Partida testified that the day following the accident, Maradiaga told her she got out of her car, stood up, and felt pain in her leg. She then fell back down, and when she got up again and started walking, the pain was "really bad." This account of the injury was consistent with the insurance forms Partida completed on May 29 and 30, 2014,

- 211 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
MARADIAGA v. SPECIALTY FINISHING
Cite as 24 Neb. App. 199

and was largely consistent with the account Maradiaga gave to the insurance adjuster on June 2, as well as the accounts in the emergency room records and the orthopedist's records, although these accounts indicated that Maradiaga twisted either "her foot" or her ankle. It was only the records from a physician's office visit on May 21 that indicated Maradiaga slipped and fell. Considering all of the evidence, the court's finding that Maradiaga's injury preceded her fall was not clearly wrong.

At another point, Maradiaga suggests the issue of whether her fall contributed to her injury is not relevant, because "[i]t is enough that an 'accident' of some kind occurred on the employer's premises, and that [she] was injured in that accident." Brief for appellant at 13. However, applying the positional risk doctrine in this manner would dilute the "arising out of" requirement of § 48-101 to where it would cease to have any significant meaning. Further, to presume that every accident occurring on the employer's premises is caused by employment would be contrary to the provision of § 48-151(2) which states that "[t]here is no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment."

[10] Although the Nebraska Supreme Court did allow for the presumption of an injury arising out of employment in a purely unexplained-fall case if it occurred in the course of employment, we note that it also stated that "[w]hen there is at least some evidence of a possibility of a personal or idiopathic factor contributing to the fall, the fall is not properly categorized as a purely unexplained fall." *Logsdon v. ISCO Co.*, 260 Neb. at 633, 618 N.W.2d at 675. It clarified that "[i]n the instant case, we are presented with a purely unexplained fall, which can be attributed only to a neutral risk." *Id.* at 634, 618 N.W.2d at 675. This is a narrow holding applicable to purely unexplained falls; extending the positional risk doctrine to the circumstances of the case before us would broaden the presumption—that the

mere occurrence of an injury at work was caused by employment—to the point of making § 48-151(2) meaningless. We decline to do so.

We recognize that an injury resulting from an "everyday activity" may be compensable if the activity "constituted a risk contributed by employment." *Cox v. Fagen Inc.*, 249 Neb. 677, 684, 545 N.W.2d 80, 86 (1996). However, as we said in *Carter v. Becton-Dickinson*, 8 Neb. App. 900, 907, 603 N.W.2d 469, 474 (1999), nonstrenuous walking is the "epitome of a nonemployment risk." Here, there is no evidence that the everyday activity of exiting a car, while carrying nothing heavier than a small lunchbox, was a risk of Maradiaga's employment.

## CONCLUSION

For the foregoing reasons, the judgment of the Nebraska Workers' Compensation Court is affirmed.

AFFIRMED.

MOORE, Chief Judge, participating on briefs.