BONNIE L. CARTER, APPELLANT,
V. BECTON-DICKINSON, APPELLEE.
603 N.W.2d 469

Filed December 21, 1999.    No. A-99-196.

Robert R. Moodie, of Friedman Law Offices, for appellant.

Donna S. Colley, of Berens & Tate, P.C., for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Bonnie L. Carter appeals the affirmance by a Workers' Compensation Court review panel of the trial judge's dismissal of her claim for workers' compensation benefits associated with a broken left hip. The trial judge dismissed Carter's petition, finding that her employment did not create a risk or contribute to a risk which aggravated a hip injury she had already suffered before the work incident at issue here. Consequently, the trial judge found that Carter had failed to show that her injury arose out of and in the course of her employment.

## BACKGROUND

Carter began working for Becton-Dickinson, a manufacturer of insulin syringes, in 1970. Since about 1990, Carter worked as a silicone inspector, earning about $426 per week. Her job required her to grade trays containing silicone that was shot into plugs resembling small golf tees. Carter would collect these samples from machines at the plant, then weigh and measure them. The physical requirements of her job included walking on the floor three times during her shift to pick up samples and record the readings. The rest of the time she would sit in a room where she performed her work on the samples.

Carter had a heart problem, which ultimately required her to undergo double bypass surgery in December 1995. As part of her recovery, she began walking for exercise, reaching a peak of 6 miles a day. This was her regime by late July 1996. On July

30, 1996, Carter saw her family doctor, Dr. Richard K. Reiner, for pain she was experiencing in her left groin area, which caused her to limp. Dr. Reiner had an x ray taken, and although he noted external and internal rotation tenderness, he viewed the x ray as normal. His diagnosis was tendonitis of the left hip, and he prescribed some medicine for it.

On August 2, 1996, Carter went to work as usual. She had been on her shift for about 15 minutes, when she dropped off trays at two machines, walked to a third, stopped, then heard a "ping" noise, and felt a sharp pain in her left hip like someone had hit her. She started to fall down, but caught herself on the machine to keep from going down. She pulled herself up and tried to walk, but her leg would not hold her. Carter was taken to the office of Dr. Reiner, who ordered another x ray. The x ray showed a displaced fracture of the left femoral neck, which we shall refer to generally as the "hip fracture." Carter was admitted to Good Samaritan Hospital and had a total hip replacement 2 days later, which was performed by Dr. Steven L. Mason. Carter was off work for 10 weeks following the surgery, then resumed her work at Becton-Dickinson. She left work again in November 1997 because her pain became worse, and on November 11, she had a revision surgery performed on the hip.

While visiting her daughter in Florida in December 1997, Carter's hip dislocated twice, and she ultimately had another hip revision surgery performed by Dr. Jeffrey L. Kugler in Florida in January 1998. Carter still has constant pain in her hip which fluctuates from mild to severe.

Carter filed a claim with Becton-Dickinson for workers' compensation, which was denied. Becton-Dickinson asserted that the hip fracture was not caused by Carter's employment, that the injury was the result of the natural progression of a preexisting condition, and that the incident does not rise to the level of an " 'accident' " as defined in the Nebraska Workers' Compensation Act.

In depositions offered and received at trial, Dr. Kugler, Carter's orthopedic surgeon in Florida, and Dr. Timothy E. Moore, an associate professor in radiology and orthopedic surgery at the University of Nebraska Medical Center, both stated that the x ray taken by Dr. Reiner on July 30, 1996,

shows a nondisplaced fracture to Carter's hip at the femoral neck. Drs. Kugler and Moore also testified that based on what they saw in the July 30 x ray, they would have immediately recommended that Carter not bear any weight on her leg until the fracture could be stabilized. Relying on these doctors' opinions, the trial judge concluded that Carter's hip was fractured on July 30, 1996, which occurred while she was not at work, that it became symptomatic while she was at work when it displaced on August 2, 1996, but that it was not due to risks of her employment. The trial judge further found that Carter failed to show that her injury arose out of and in the course of her employment. The judge therefore dismissed Carter's petition. On appeal, a three-judge panel of the Workers' Compensation Court affirmed, stating that the findings of fact made by the trial judge were not clearly wrong and that there were no errors of law.

## ASSIGNMENTS OF ERROR

Carter asserts that the Workers' Compensation Court erred (1) in finding that Carter's employment did not create a risk or contribute to a risk which aggravated the injury which she had already suffered and (2) in finding that Carter failed to show that her injury arose out of and in the course of her employment.

## STANDARD OF REVIEW

Upon appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Miller v. Meister & Segrist*, 255 Neb. 805, 587 N.W.2d 399 (1998). If the record contains evidence to substantiate the factual conclusions reached by the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999); *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998).

## ANALYSIS

Carter asserts that her employment at Becton-Dickinson created or contributed to a risk which combined with her preexisting hip condition to produce injury and disability. Thus, she argues, her injury " 'arose out of' " her employment. Brief for

appellant at 3. However, Carter's brief specifically states that she does not contest the trial judge's finding of fact that her hip was fractured on July 30, 1996, which occurred while she was not at work, and that it became symptomatic while she was at work when it displaced on August 2, 1996.

The purpose of the Nebraska Workers' Compensation Act is to compensate an employee for a loss in earning power because of an accidental injury arising out of and in the course of employment. *Warner v. State*, 190 Neb. 643, 211 N.W.2d 408 (1973); *Gibson-Voss v. Voss*, 4 Neb. App. 236, 541 N.W.2d 74 (1995).

■ To recover compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997); *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992). Further, in a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Winn, supra.* Such claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition no disability would have resulted. *Id.*; *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996).

■ The "arising out of" component of the test for workers' compensation coverage addresses the accident and its origin, cause, and character, that is, whether it resulted from risks arising within the scope of the employee's job, and "in the course of," which refers to the time, place, and circumstances surrounding the accident. *Cox, supra.* The two phrases are conjunctive, and the claimant must establish both conditions by a preponderance of evidence. *Id.* The "in the course of" requirement for workers' compensation coverage demands that the injury be shown to have arisen within the time and space boundaries of employment, as well as in the course of an activity

whose purpose is related to the employment. *Id.* The "arising out of" requirement for workers' compensation coverage is primarily concerned with causation. *Id.* Determination of causation is ordinarily a matter for the trier of fact. *Id.*

It seems clear that the proper analytical focus is whether Carter's hip fracture "arose out of" her employment. In other words, Did it arise from risk connected with her employment? Carter does not contest the trial judge's finding that her hip was fractured on July 30, 1996. The evidence reveals that Carter was suffering from low bone mass consistent with osteoporosis; that the fracture was spontaneous, according to Dr. Reiner; and that she was at risk for additional spontaneous fractures unless she received proper medication. The record reveals that she had a number of personal risks for osteoporosis, including being an older Caucasian female, having smoked for 15 years, having had her ovaries removed, and having had a sedentary lifestyle, prior to her recent walking program. These things are all personal risks predisposing her to the nonemployment, nondisplaced hip fracture admittedly present on July 30, 1996, and predisposing her to the displacement of that fracture when merely bearing the weight of her own body while walking. There was evidence from Dr. Moore that the only way to avoid the natural progression (to displacement) of the fracture present on the July 30 x ray was for her to be on a non-weight-bearing status, i.e., bed rest, crutches, or a wheelchair. This fact necessarily leads to the reality that Carter was already disabled before she came to her job on August 2, had she received an accurate diagnosis on July 30.

While Carter argues that this fracture was a preexisting condition which combined with an injury from her employment to create a compensable claim, there is ample evidence upon which the trial judge could find that there was no injury at work and no employment risk of a causative nature. While Carter was at work when her hip fracture displaced, that fact only satisfies the "in the course of the employment" requirement, whereas, we are primarily concerned with the "arising out of" component of the two-part test.

In addition, Neb. Rev. Stat. § 48-151(2) (Reissue 1993) provides:

> The word accident shall be construed to mean an unex-
> pected or unforeseen injury happening suddenly and vio-
> lently, with or without human fault, and producing at the
> time objective symptoms of an injury. *The claimant shall*
> *have a burden of proof to establish by a preponderance of*
> *the evidence that such unexpected or unforeseen injury*
> *was in fact caused by the employment. There shall be no*
> *presumption from the mere occurrence of such unexpected*
> *or unforeseen injury that the injury was in fact caused by*
> *the employment.*

(Emphasis supplied.)

Thus, the fact that the final displacement of the fracture occurred on her employer's premises is not of great moment in the analysis of causation. In this case, there was no "injury" that arose out of Carter's employment and no evidence that an employment risk caused her hip fracture to displace. The displacement of Carter's hip was the result of a natural progression of the preexisting fracture to it, initially caused by the stress of walking 6 miles a day while suffering from the disease of osteoporosis. The evidence allows the trial judge to conclude that the final manifestation of that disease process indiscriminately manifested itself while Carter was walking at her workplace, without a causative work risk that our jurisprudence requires. Thus, the trial court could properly find that this was not a compensable work injury under the Nebraska Workers' Compensation Act.

Carter relies on the case *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996), in which an employee, who had a prior history of chiropractic treatment to his back, injured his back while pulling his coveralls on over his work boots while at his workplace. The Supreme Court held that his injury occurred in the course of his employment and that it arose out of his employment, notwithstanding the employee's preexisting back condition. In *Cox*, it was found that "[t]he medical evidence is such that the compensation court as the finder of fact could reasonably conclude that the act of putting on the coveralls caused the injury." *Id.* at 684, 545 N.W.2d at 86. Thus, on a fundamental level, *Cox* is closely involved with the limited review of factual questions by the appellate courts in workers' compensation

cases. The court in *Cox* made it clear that when there is the concurrence of a personal risk, such as a preexisting injury, and an employment risk, the personal risk does not defeat compensability if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability. *Cox* also discusses everyday risks in the context that the employee there was hurt while pulling on his coveralls. While the *Cox* court said that this was not an everyday risk, it also said that even if it was, there could be an award of compensation if this everyday activity constituted a risk contributed by the employment and combined with the work activity to produce the injury.

Here, we think the facts are different because nonstrenuous walking, bearing one's body's weight, Carter's only activity when the fracture displaced, is the epitome of a nonemployment risk. That is particularly true when the case is seen against the backdrop of her preexisting osteoporosis. We find that the trial judge, as the finder of fact, had ample evidence from which to find that there was no employment risk and that *Cox* is distinguishable on the facts. Therefore, as the Workers' Compensation Court was not clearly wrong in its findings of fact, we affirm.

AFFIRMED.