KYLE LUCAS, APPELLANT AND CROSS-APPELLEE, V.
ANDERSON FORD AND MID-CENTURY INSURANCE,
DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLEES
AND CROSS-APPELLEES, AND MICHAEL K. HIGH,
CONSERVATOR-TRUSTEE OF THE STATE OF NEBRASKA
WORKERS' COMPENSATION TRUST FUND, AND THE
STATE OF NEBRASKA, THIRD-PARTY DEFENDANTS,
APPELLEES AND CROSS-APPELLANTS.

689 N.W.2d 354

Filed November 23, 2004.    No. A-03-1079.

Daniel J. Thayer for appellant.

Jenny L. Panko and David A. Dudley, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees Anderson Ford and Mid-Century Insurance.

Jon Bruning, Attorney General, and John R. Thompson for appellees Michael K. High and State of Nebraska.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## INTRODUCTION

Kyle Lucas appeals from an order of the review panel of the Nebraska Workers' Compensation Court reversing the trial court's award of benefits to Lucas and dismissing Lucas' petition against Anderson Ford and Mid-Century Insurance (collectively Anderson); Michael K. High, conservator-trustee of the Workers' Compensation Trust Fund (Trust Fund); and the State of Nebraska. High and the State cross-appeal. For the reasons set forth below, we affirm. We hereby withdraw the opinion in this case released on October 12, 2004, previously found at *Lucas v.*

*Anderson Ford*, 12 Neb. App. 951, 687 N.W.2d 430 (2004), and this opinion shall supersede and replace our earlier opinion.

## BACKGROUND

On March 14, 2001, Lucas filed a petition, claiming that he injured his left hip in a work-related accident in March 1996 while working for Anderson Ford. In its answer, Anderson denied liability for Lucas' injuries. On October 25, Anderson filed a motion asking leave to file a third-party complaint against the Trust Fund, stating in the proposed complaint that the Trust Fund was liable because Lucas had an amputation below the left knee at the time he was hired by Anderson Ford and Anderson Ford had actual knowledge of Lucas' amputation.

In an order filed November 9, 2001, the trial judge directed Anderson to add High, the presiding judge of the Nebraska Workers' Compensation Court and by statute the person "charged with the conservation of the assets of the Workers' Compensation Trust Fund," Neb. Rev. Stat. § 48-162.02(8) (Cum. Supp. 2002). After the filing of an amended third-party petition, High filed an answer on February 8, 2002, stating that he was not a proper party to this lawsuit.

Trial on Lucas' petition was held on June 25, 2002. At trial, Lucas testified that in the 1970's, he was involved in a motorcycle accident which resulted in the amputation of his left leg below the knee. The record shows that Lucas has worn a prosthesis since that time. Lucas testified that Anderson Ford was aware that he is an amputee and that at times he would use crutches or a cane while at work.

Lucas testified that since his motorcycle accident, he has suffered from chronic osteomyelitis, which is an infection in his bones, in addition to "phantom pain." The evidence describes phantom pain as pain triggered by nerves damaged as a result of an amputation.

In March 1996, Lucas was working as a manager at Anderson Ford and assisted customers with leasing vehicles, in addition to selling customers new vehicles. The record shows that on March 31, Lucas was sitting at a desk talking to a coworker who was seated across from him. At trial, the coworker testified that Lucas then stood up from the desk and that a look of severe pain crossed

Lucas' face. The coworker testified that Lucas' eyes then rolled back into his head and that Lucas fell flat on the floor to Lucas' left. The coworker testified that Lucas did not hit anything as he fell but did knock something off the desk and that Lucas' chair moved as a result of the fall. The coworker testified that he did not see Lucas stumble or trip prior to his fall.

Lucas testified that when he stood up, he felt a "pain or a tugging" on his left leg from an unknown source. Although Lucas could not specify what he caught his left leg on, he stated that there were numerous items underneath and near the chair on which he was sitting, including a roller pad, electrical cords, desk legs, and chair legs. Lucas also testified that besides a tugging sensation, he felt a severe pain in his left hip area. Lucas testified that he immediately passed out and remembers waking up with several people standing over him.

In the emergency room, Lucas was treated for his fainting episode and subsequent complaints of hip pain. Tests revealed that Lucas had broken a bone in his hip, and Lucas underwent surgery to repair his hip. Subsequently, Lucas continued to have pain in his hip and eventually traveled to the Mayo Clinic in Rochester, Minnesota, for treatment. Lucas had been to the Mayo Clinic before for treatment regarding his prosthesis. At the Mayo Clinic, Lucas underwent a procedure to reset his hip and his leg was further amputated above his left knee. Although Lucas returned to work after his second hip surgery, he discontinued his employment with Anderson Ford on March 1, 2001, because of continued pain in his hip and lower back.

At trial, Lucas entered into evidence the deposition of Dr. Stephen Husen, his primary physician. Husen stated that there were two possible reasons Lucas fractured his hip. Husen stated that either Lucas fractured his hip as a result of his fall to the ground after fainting or Lucas fractured his hip upon standing and the pain caused him to faint and subsequently fall. Husen testified that in his experience, a fracture usually precipitates a fall and not the other way around. Husen stated that the type of fracture Lucas suffered was not the type of fracture that normally occurs spontaneously in Lucas' age group. Husen testified that he could only speculate that Lucas had a weak spot in his hip as a result of his past injuries, predisposing him to the fracture.

Husen's partner saw Lucas in the hospital after Lucas fainted. In Husen's notes entered into evidence at trial, his partner stated that it was his suspicion that Lucas may have fainted because of a prolonged fast or hypoglycemia which was aggravated by Lucas' alcohol usage the previous evening.

In an order filed December 11, 2002, the trial court entered an award, finding that Lucas had suffered a compensable accident and injury arising out of his employment with Anderson Ford. The trial court, relying on Husen's partner's opinion, found that Lucas had fainted due to hypoglycemia. The trial court noted that although this had been Lucas' personal risk, the placement of the desk and the chair at Lucas' workspace increased Lucas' risk of injury.

The trial court ordered Anderson to pay Lucas' medical bills, the cost of certain prescriptions, mileage expenses, a $100 charge incurred by Lucas at the Mayo Clinic, and future medical expenses. The trial court ordered Anderson to pay Lucas temporary total disability benefits for a period of $5^6/_7$ weeks. The trial court further found Lucas to be permanently totally disabled and stated that High, as conservator-trustee of the Trust Fund, was 45-percent liable and Anderson 55-percent liable for Lucas' permanent total disability benefits. The trial court found that after 300 weekly payments, High, as conservator-trustee of the Trust Fund, would become 100-percent liable. Anderson appealed to the review panel, and High and the State cross-appealed.

On September 3, 2003, the review panel entered an order of reversal and dismissal. In its order, the review panel stated that the trial court was clearly wrong in finding that Lucas suffered an accident arising out of his employment. The review panel also found that High, as conservator of the Trust Fund, was not a proper party to the action, but stated that that issue was moot, given the review panel's conclusion that Lucas was not entitled to benefits.

Lucas appeals, and High and the State cross-appeal.

## ASSIGNMENTS OF ERROR

Lucas' sole assignment of error on appeal is that the review panel erred in its finding that there was no evidence to support the trial court's finding that his fall was compensable. In the cross-appeal, High and the State contend that High, as conservator of

the Trust Fund, is not a proper party to this action and assert that instead, the Trust Fund itself is the proper third party.

## STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004).

■ In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the trial judge who conducted the original hearing. *Id.*

■ Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

## ANALYSIS

Lucas' sole assignment of error on appeal is that the review panel erred in its finding that there was no evidence to support the trial court's finding that his fall was compensable. Lucas argues that even though he fainted because of hypoglycemia, a personal cause, he is entitled to recover because the desk at which and the chair in which he was sitting changed the manner in which he fell, increasing his risk of injury. Anderson, High, and the State contend that Lucas' fall resulted from a purely idiopathic or personal condition and that Lucas' work environment did not increase Lucas' risk of injury.

■ All risks causing injury to an employee can be placed within three categories: (1) employment-related—risks distinctly associated with the employment; (2) personal—risks personal to the claimant, e.g., idiopathic causes; and (3) neutral—risks that are neither distinctly associated with the employment nor personal to the claimant. *Logsdon v. ISCO Co.*, 260 Neb. 624, 618

N.W.2d 667 (2000). Harm that arises from risks distinctly associated with the employment is universally compensable. *Id.* Harm that can be attributed to personal or idiopathic causes is universally noncompensable. *Id.* In Nebraska, harm that arises from neutral risks (risks having no particular employment or personal character) is generally compensable. *Id.*

In the instant case, the trial court found that Lucas fainted because he was hypoglycemic and that Lucas fell as a result, fracturing his hip. Because the trial court found that Lucas' fall was not an unexplained fall, but, rather, an idiopathic fall, Lucas was required to show some affirmative employment contribution to offset the fact that his fall was precipitated by a personal condition. See *Svehla v. Beverly Enterprises,* 5 Neb. App. 765, 567 N.W.2d 582 (1997). Stated another way, an employee's injuries sustained in a fall caused via personal risk or condition are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. *Id.*

In its order, the trial court stated, "I find that the desk and the chair created an increased risk in that the fracture is a result of how one hits the floor, and how one hits the floor is depend[e]nt on what obstacles are present which change the way the plaintiff lands on the floor."

The review panel reversed the trial court's order, stating that the trial court was clearly wrong in finding that Lucas suffered an accident arising out of his employment and stating that there was insufficient evidence "to remove his idiopathic fall from the application of the general rule that harm that can be attributed to personal or idiopathic causes is universally non compensable." We agree with the review panel. There is no evidence to support the trial court's finding that Lucas' risk of injury was increased because Lucas was getting up from a chair behind a desk when he fell to the ground.

In *Nunn v. Texaco Trading & Transp.,* 3 Neb. App. 101, 523 N.W.2d 705 (1994), the review panel affirmed the trial court's award of benefits to Thomas E. Nunn. In that case, Nunn's accident occurred when he blacked out while driving a truck hauling thousands of gallons of crude oil. Upon impact, the oil ignited, burning Nunn severely. We held that Nunn's employment

reasonably required him to be at the place where he blacked out at the time when he did and that his duties exposed him to a greater risk, since he was carrying 8,000 to 10,000 gallons of oil. Thus, we held that the consequences of Nunn's blacking out while driving his truck were more severe than the consequences of blacking out at home or while walking on a sidewalk.

In the instant case, there is no evidence like that in *Nunn v. Texaco Trading & Transp., supra*, to substantiate the view that Lucas' employment placed him at increased risk of injury from a fainting episode. Lucas argues that his increased physical exertion at work increased his risk of injury, but the evidence shows that Lucas fainted upon standing up after sitting at a desk. We have held that nonstrenuous walking, while bearing one's own body weight, "is the epitome of a nonemployment risk." *Carter v. Becton-Dickinson*, 8 Neb. App. 900, 907, 603 N.W.2d 469, 474 (1999). Standing up from a seated position certainly does not constitute any greater risk.

Lucas also argues that he was at increased risk because he was working at a desk and fell onto that desk, injuring himself. The record shows that Lucas did not fall onto the desk, but, rather, fell to his left, to one side of the desk, flat on the floor. Furthermore, even if we assume that the desk changed the manner in which Lucas fell, it is difficult for us to conceive that Lucas faced an increased risk of injury because he was getting up from his chair behind a desk. There is no evidence that Lucas' act of sitting behind a desk made the consequences of Lucas' fainting spell more severe than if Lucas had fainted at home or while walking on a sidewalk. Thus, we conclude that the trial judge erred in finding that the placement of the desk and chair at which Lucas worked increased Lucas' injuries. As the review panel found, there is no evidence to support the trial court's determination, and we affirm the review panel's decision in that regard.

## CROSS-APPEAL

In the cross-appeal, High and the State contend that High, as conservator of the Trust Fund, is not a proper party to this action and that instead, the Trust Fund itself is the proper third party. High and the State argue that the review panel erred in finding that this issue was moot and that "Judge High still has an interest in

the outcome of the litigation should it ultimately be held that Lucas deserves compensation for his injuries." Brief for third-party defendants and appellees on cross-appeal at 14. We believe we should deal with the issue which apparently is festering within the Workers' Compensation Court and which is before us via the cross-appeal.

■ In *Jim's, Inc. v. Willman*, 247 Neb. 430, 434, 527 N.W.2d 626, 630 (1995), the Nebraska Supreme Court cautioned:

> A judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue interference in a trial may tend to prevent the proper presentation of the cause of action. [Citation omitted.] A judge must be careful not to appear to act in the dual capacity of judge and advocate. *State v. Brown*, 124 Ariz. 97, 602 P.2d 478 (1979).

In *Jim's, Inc.*, the trial judge had suggested that a motion for summary judgment be filed as he was ruling on another motion. The trial judge thereafter overruled a litigant's motion that the judge recuse himself, but the Supreme Court reversed the grant of summary judgment and ordered that the motion therefor be reheard by a different judge, using the above rationale.

In the case before us, Anderson filed a motion for leave to file a third-party complaint to bring the "Second Injury Fund" into the case, attaching a proposed third-party complaint in which the "Second Injury Fund" was named as "Third-Party Defendant." The traditional way of naming the Trust Fund in cases involving prior disabling injuries, diseases, or conditions has been to implead the State of Nebraska, Second Injury Fund. See *Runyan v. State*, 179 Neb. 371, 138 N.W.2d 484 (1965). The trial judge sustained the motion, saying that claims for contributions for subsequent injuries are paid out of the Trust Fund, citing Neb. Rev. Stat. § 48-128(1)(a) (Cum. Supp. 2002); but the judge expressly directed that the third-party defendant be "Michael K. High, Conservator of the Workers' Compensation Trust Fund, Third Party Defendant." High is the presiding judge of the Workers' Compensation Court. Counsel for Anderson complied with the trial judge's order, naming High as a party. On appeal of Lucas' award to the review panel, in which appeal the award was reversed, the review panel, although it found the issue to have

become moot, agreed with the position of High and the State that High was not a proper party, saying that the trial judge's order requiring Anderson to name High as a third party was "a continuation of [the trial judge's] crusade to assert what [he] believes to be a conflict of interest on the part of [High]."

There is no record of any hearing on the motion to name the Trust Fund as a third party, nor any record before us to illustrate the so-called "crusade" referenced by the review panel. Nonetheless, the governing statute, § 48-162.02(8), clearly provides in part: "When a claim is made by or against the [Trust Fund] pursuant to section 48-128 the State of Nebraska shall be impleaded as a party plaintiff or defendant, as the case may require, and when so impleaded as a defendant service shall be had upon the Attorney General." Thus, the trial judge's order that High be named as a party is obviously wrong, as the statute directs that the State of Nebraska is the proper party defendant when a claim is made, as here, against the Trust Fund. The trial judge ordered Anderson's counsel to name a different party, perhaps bumping up against the precautionary message of *Jim's, Inc. v. Willman, supra,* in the process; plus, he ignored the plain language of the controlling statute. Thus, while our affirmance of the review panel's dismissal of Lucas' underlying claim renders Lucas' claim against the Trust Fund—or High—moot, we find that the public interest exception to the mootness doctrine requires that we comment (as did the review panel without express reference to such exception) on the issue raised by the cross-appeal of High and the State. See *Rath v. City of Sutton,* 267 Neb. 265, 673 N.W.2d 869 (2004) (exception requires consideration of (1) public or private nature of question presented, (2) desirability of authoritative adjudication for guidance of public officials, and (3) likelihood of recurrence of same or similar problem).

Here, the question is public, there is some chance of intracourt difficulties occurring as a result of the trial judge's position, and if, indeed, this issue has been raised by the trial judge "during oral arguments for over two years" as stated in the review panel's decision, then recurrence of the issue is likely and resolution is obviously needed. We find, as did the review panel, that the issue raised by High and the State is moot; but we further find that

the circumstances compel us to address it under the public interest exception. When claims are made against the Trust Fund, the proper procedure is set forth in § 48-162.02(8), which provides that the State of Nebraska is impleaded as a party or may bring an action under §§ 48-128 and 48-162.02. The presiding judge of the Workers' Compensation Court is not a proper party in cases involving claims under §§ 48-128 and 48-162.02.

## CONCLUSION

After reviewing the record, we conclude that the trial court erred in finding that Lucas' accident and injuries arose out of and in the course of his employment. Therefore, we affirm the decision of the review panel, finding that there was no evidence to support the trial court's finding that Lucas' fall was compensable and dismissing Lucas' appeal. We find that the cross-appeal was properly addressable under the public interest exception to the mootness doctrine, and we sustain the cross-appeal.

AFFIRMED. CROSS-APPEAL SUSTAINED.

CARLSON, Judge, concurring in part, and in part dissenting.

I agree with the majority that the trial court erred in finding that Lucas' accident and injuries arose out of and in the course of his employment. Therefore, I would also affirm the decision of the review panel finding that there was no evidence to support the trial court's finding that Lucas' fall was compensable and dismissing Lucas' appeal.

As to the cross-appeal, High and the State contend that High, as conservator-trustee of the Trust Fund, is not a proper party to this action and that instead, the Trust Fund itself is the proper third party. High and the State argue that the review panel erred in finding that this issue was moot and that "Judge High still has an interest in the outcome of the litigation should it ultimately be held that Lucas deserves compensation for his injuries." Brief for third-party defendants and appellees on cross-appeal at 14. Based on our conclusion that Lucas is not entitled to an award, I feel it is not necessary to resolve the issue of whether High was properly named as a party. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Mabile v. Drivers Mgmt., Inc.*, 11 Neb. App. 765, 660 N.W.2d 537 (2003).